**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **TEAM KENNEDY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **COMPLAINT  #_____** |
| **vs.** | : | |
| | : | |
| **HENRY T. BERGER, in his official** | : | |
| **capacity as the Co-Chair of the New York** | : | |
| **State Board of Elections; PETER S.** | : | |
| **KOSINSKI, in his official capacity as the** | : | |
| **Co-Chair of the New York State Board of** | : | |
| **Elections; ESSMA BAGNUOLA, in her** | : | |
| **official capacity as a Commissioner of the** | : | |
| **New York State Board of Elections;** | : | |
| **ANTHONY J. CASSALE, in his official** | : | |
| **capacity as a Commissioner of the New** | : | |
| **York State Board of Elections; KRISTEN** | : | |
| **ZEBROWSKI STAVISKY, in her official** | : | |
| **capacity as Co-Executive Director of the** | : | |
| **New York State Board of Elections;** | : | |
| **RAYMOND J. RILEY, III, in his official** | : | |
| **Capacity as Co-Executive Director of the** | : | |
| **New York State Board of Elections; and,** | : | : |
| **LETITIA JAMES, in her official capacity** | : | |
| **as the Attorney General of the state of** | : | |
| **New York,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### I.  INTRODUCTION

1.      Plaintiff Team Kennedy (hereinafter "Plaintiff" or "Team Kennedy"),

by and through undersigned legal counsel, bring this action against: (1) Henry T.

1

Berger, in his official capacity as a Commissioner and Co-Chair of the New York

State Board of Elections; (2) Peter S. Kosinski, in his official capacity as a

Commissioner and Co-Chair of the New York State Board of Elections; (3) Essma

Bagnuola, in her official capacity as a Commissioner of the New York State Board

of Elections; (4) Anthony J. Cassale, in his official capacity as a Commissioner of

the New York State Board of Elections; (5) Kristen Zebrowski Stavisky, in her

official capacity as Co-Executive Director of the New York State Board of

Elections; (6) Raymond J. Riley, III, in his official capacity as Co-Executive

Director of the New York State Board of Elections; and, (7) Letitia James, in her

official capacity as the Attorney General of the state of New York (collectively

"Defendants" and individually as a specifically named "Defendant") and

(Defendants Berger, Kosinski, Bagnuola, Cassale, Stavisky, and Riley hereinafter

collectively "NYSBE Defendants") all of whom are the chief officials charged with

enforcement of the unconstitutional provisions challenged in this action.

2.      While Defendants may constitutionally enforce restrictions on ballot

access in order to prevent frivolous candidates from being placed on the general

election ballot to protect voters from a confused and clutter ballot, the First and

Fourteenth Amendments to the United States Constitution prevent Defendants from

enforcing ballot access restrictions which do not support an underlying state

interest or are severe burdens on free speech not narrowly tailored to advance a compelling governmental interest.

3.    New York's ballot access restrictions are designed to circumvent constitutional requirements that require states to permit third-party and independent candidates on the general election ballot who can demonstrate more than a modicum of support within the state.  This is particularly clear in the context of presidential candidates where the state of New York has a reduced interest in regulating access to their general election ballot as part of a national election contest.

4.    The ballot access restrictions challenged in this action, both individually and in tandem, are designed to evade the constitutional requirement that New York place third-party and independent candidates who can demonstrate the constitutionally required level of support on their general election ballot.

5.    Plaintiff requests preliminary injunctive and permanent declaratory and injunctive relief against Defendants' enforcement of: (1) Section 6-140(1)(b) of the New York Election Code's (hereinafter "Section 6-140(1)(b)") prohibits a petition circulator/witness from signing the "Statement of a Witness" if they sign a nominating petition as a voter for another candidate for the same office – if they do, the otherwise valid signatures of every voter who signed a nominating petition circulated by that petition circulator is rendered invalid; (2) Section 6-130 of the

New York Election Code's (hereinafter "Section 6-130") requirement that petition signers may only record their city or town and prohibiting petition signers recording their village, even when their voter registration record identifies the voter with their village and not the voter's city or town, serve no legitimate state interest sufficient to invalidate otherwise verifiably valid signatures recorded on Plaintiff's nominating petition; (3) the requirement for independent presidential candidates to name their slate of presidential electors on their nominating petition as a condition precedent to lawfully collecting signatures on Plaintiff's nominating petition to secure ballot access in New York, when political party candidates are not required to name their slate of presidential electors until after the national nominating conventions in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (4) the combined effect of Section 6-142 of the New York Election Code imposing the requirement for independent presidential candidates to collect a minimum of 45,000 valid signatures on nominating petitions within just 5 weeks and Section 6-154 of the New York Election Code imposing the requirement for independent presidential candidates to absorb the cost of the verification of nominating petition signatures based on a private petition challenge process, together impose a severe burden on rights guaranteed under the First and Fourteenth Amendments to the United States Constitution (either Section 6-142 or 6-154 of the New York Election Code must

be enjoined); and, (5) the ban and imposition of criminal sanctions, on per-signature compensation for petition circulators and witnesses of nominating petitions imposed under 17-122(4) of the New York Election Code (hereinafter the "Valid Per-Signature Compensation Ban") imposes a severe burden to rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

6. Defendants' enforcement of Section 6-140(1)(b)'s restriction on Plaintiff's petition circulators and witnesses from signing other nominating petitions for the same office is a ballot access restriction which fails to protect any legitimate state interest and permits Plaintiff's political opponents to encourage Plaintiff's petition circulators and witnesses to sign other nominating petitions in order to invalidate large numbers of otherwise valid nominating petition signatures from voters who expressed an intention to sign Plaintiff's nominating petitions. Section 6-140(1)(b) also encourages Plaintiff's political enemies to infiltrate Plaintiff's petition drive, circulate Plaintiff's nominating petitions, accept compensation from Plaintiff (thereby depleting Plaintiff's campaign war-chest) and then merely signing another nominating petition for the same office which, under Section 65-140(1)(b) invalidates every otherwise valid petition signature collected by such circulators and/or witnesses as a result of such a scheme. At bottom, the political conduct of the person merely holding a clipboard to collect signatures

from voters is of no import and does not implicate any legitimate state interest, as the only operative signatures on a nominating petition are those of qualified voters who exercise their right, protected under the First and Fourteenth Amendments to the United States Constitution, to sign Plaintiff's nominating petition.

7.      Section 6-130 requires voters who sign nomination petitions to record their city or town for the signature to be valid.  However, the voter file provided by the Secretary of State does not restrict voter registration records to city and town designations.  The New York voter file is polluted with millions of voters who are identified by their village.  The failure of the New York voter file to match the ballot access requirements of Section 6-130 make it impossible for Plaintiff to either validate or correct a voter's signature recording their village rather than their city or town when the voter file also records the voter's village rather than their city or town.  The inconsistent data provided by the Secretary of State renders the requirement of Section 6-130 a severe impairment of core political speech protected under the First and Fourteenth Amendments to the United States Constitution and is not currently tailored to advance any legitimate state interest sufficient to survive either strict scrutiny or the balancing test analysis under *Anderson v. Celebrezze*, 460 U.S. 780 (1983).  Under current facts Section 6-130 is a naked restriction on core political speech which must be enjoined for the current election cycle.

8.      NYSBE Defendants require Plaintiff to name presidential electors on the nomination petition as a condition precedent to being able to collect ballot access signatures.  The requirement imposes an unequal application of the law, insofar as presidential candidates for political parties are not required to name their presidential electors until after the national political conventions are concluded in August.  The early requirement imposed on independent presidential candidates subjects such presidential electors to longer public scrutiny and harassment from political opponents than presidential electors named nu political party presidential candidates.  The earlier deadline alos imposes the requirement for independent presidential candidates to make quicker decisions as to their slate of electors permitting less time to fully vet presidential electors than the time provided to political party presidential nominees.  Further, any defect of earlier selected presidential candidates threatens to invalidate an independent presidential candidate's nomination petition and ballot access in New York should it be later discovered than one or more of the presidential electors is not legally qualified to hold the office of presidential elector.  There is no state interest advanced in requiring independent presidential candidates to name their slate of electors a full three months before presidential candidates of the major political party, as presidential electors are not printed on the ballot and, in any case, not required until the major party candidates name their presidential electors.  Accordingly, the

requirement imposed on independent presidential candidates to name presidential

electors on their nominating petition imposes a severe burden, without any

legitimate state interest, on rights guaranteed under the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution.

9.      The United States Court of Appeals for the Third Circuit held that the

combined burden of collecting both a large number of ballot access petition

signatures, coupled with the requirement that independent presidential candidates

finance the legal defense as to the validity of nomination petitions resulting from a

private petition challenge process, imposes a severe burden on rights guaranteed

under the First and Fourteenth Amendments to the United States Constitution.  An

indistinguishable petition signature requirement coupled with a private challenge

process in Pennsylvania was held unconstitutional by the federal district and

appellate courts.  Defendants may either enforce the newly increased signature

collection requirement of 45,000 signatures to secure ballot access or keep the

private challenge process to ballot access petitions – but they may not impose both

under Sections 6-142 and 6-154 of the New York Election Code.  Pennsylvania

was required to choose between its large number of signatures for ballot access or

to keep the private challenge process for ballot access petitions.  Pennsylvania

chose to retain the private challenge process for ballot access petitions.  Based on

the Commonwealth's decision, the district court reduced Pennsylvania's signature

collection requirement for ballot access to a flat 5,000 signatures.  This court

should impose on Defendants the same choice – keep the private challenge process

and reduce the number of signatures required to secure ballot access down to the

previous 15,000 valid signatures or keep the current 45,000 valid signature

requirement for ballot access and validate petition signatures internal to the

NYSBE Defendants' staff.

      10.    The Valid Per-Signature Compensation Ban imposes on Plaintiff the

requirement to compensate fraudulent signatures.  The ban on per-signature

compensation – a ban which prohibits compensation based on the number of valid

petition signatures collected – imposes a purely time-based compensation model

which requires Plaintiff to compensate petition circulators for fraudulent petition

signatures.  The Valid Per-Signature Compensation Ban is designed to make the

collection of ballot access petition signatures far more expensive and inefficient

than compensation based on the number of valid signatures collected.  Under the

Valid Per-Signature Compensation Ban, Plaintiff has been forced to pay petition

circulators $90.00 per hour, costing Plaintiff over $1.1 million dollars just to secure

ballot access in New York for the 2024 general election ballot.  Compensation

based on valid signatures collected would have cost just about $450,000.00.

Because the Valid Per-Signature Compensation Ban requires Plaintiff to remit full

compensation for fraudulent petition signatures, Section 17-122(4) of the New

York Election Code fails to advance any legitimate governmental interest. Accordingly, Section 17-122(4) of the New York Election Code severely impairs rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

## II.  JURISDICTION

11.     Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §§1983, 1988 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983, as Plaintiff alleges violation of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.  This Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has personal jurisdiction over each Defendant.  Each of the Defendants is sued in his or her official capacity as an officer or agent of the government of the state of New York.  Furthermore, on information and belief, each of the Defendants resides in the State of New York.

## III.  VENUE

13.     Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. §1391(b)(2) as Plaintiff collected thousands

of nominating petition signatures in this district, and therefore a substantial part of the events giving rise to the claims occurred in this district.  Furthermore, Defendant James maintains several offices within this district.

## IV.    PARTIES

14.    Team Kennedy is the principal campaign committee to elect Robert F. Kennedy Jr., to the Office of President of the United States at the 2024 general election.  Team Kennedy is a registered campaign committee with the Federal Elections Commission.  Team Kennedy filed FEC Form 1, Statement of Organization on April 5, 2023.  Team Kennedy's FEC Committee I.D. Number is C00836916.  In order to qualify for New York's 2024 general election ballot for the office of President of the United States, Team Kennedy must collect a minimum of 45,000 valid signatures from registered voters on nominating petitions naming both Mr. Kennedy's vice-presidential candidate and a slate of presidential electors in just six (6) weeks.  Presidential electors for independent presidential candidates must be disaffiliated no later than February 14, 2024.  Team Kennedy must file nominating petitions and other documents with NYSBE Defendants no later than May 28, 2024.  As a direct result of the ban on per-signature compensation, Plaintiff has been forced to spend more than $1.1 million dollars.  The address for Team Kennedy is: 124 Washington Street, STE 101, Foxborough, MA  02035.

15.     Defendant Henry T. Berger is a Co-Chair of the New York State Board of Elections.  He is sued in his official capacity.  The New York State Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.  Based on information and belief, Defendant Berger is a resident of the state of New York.

16.     Defendant Peter S. Kosinski is a Co-Chair of the New York State Board of Elections.  He is sued in his official capacity.  The New York State Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.   Based on information and belief, Defendant Kosinski is a resident of the state of New York.

17.     Defendant Essma Bagnuola is a Commissioner of the New York State Board of Elections.  She is sued in his official capacity.  The New York State Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.   Based on information and belief, Defendant Bagnuola is a resident of the state of New York.

18.     Defendant Anthony J. Cassale is a Commissioner of the New York State Board of Elections.  He is sued in his official capacity.  The New York State

Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.   Based on information and belief, Defendant Cassale is a resident of the state of New York.

19.    Defendant Kristen Zebrowski Stavisky is Co-Executive Director of the New York State Board of Elections.  She is sued in his official capacity.  The New York State Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.   Based on information and belief, Defendant Stavisky is a resident of the state of New York.

20.    Defendant Raymond J. Riley, III is Co-Executive Director of the New York State Board of Elections.  He is sued in his official capacity.  The New York State Board of Elections is an agency within the Executive Department of the state of New York and is responsible for administering and enforcing all laws relating to elections in the state of New York.   Based on information and belief, Defendant Riley is a resident of the state of New York.

21.    Defendant Letitia James is the Attorney General of the state of New York.  Defendant James is the chief legal and law enforcement officer of the state of New York  Defendant James is empowered to enforce a violation of the ban on

per-signature compensation pursuant to Section 17-122(4) of the New York

Election Code.

## V.  RELEVANT FACTS

22.    Plaintiff incorporates, by reference, all previous paragraphs as if fully

set forth within this section of "Relevant Facts."

23.    Robert F. Kennedy Jr., is an announced independent candidate for the

office of President of the United States for the 2024 general election

24.    Plaintiff is Robert F. Kennedy's campaign committee.

25.    Plaintiff is actively working to secure ballot access on New York's

general election ballot for Robert F. Kennedy Jr, and Nicole Shanahan for the

office of President and Vice President of the United States.

26.    Plaintiff is required to circulate nominating petitions to collect the

signatures, printed names, street address, city or town (or county of the voter

resides in New York city) of registered New York voters and the date the voter

signs the nominating petition to place Robert F. Kennedy Jr.'s and Nicol Shanahan

on the 2024 New York general election ballot for the offices of President and Vice

President of the United States.

27.    The names of Robert F. Kennedy and Nicole Shanahan are required to

be printed on the nominating petition used to collect signatures to secure ballot

access in the state of New York.

28.     In addition to the names of Robert F. Kennedy Jr. and Nicole

Shanahan, Plaintiff is also required to name and print on the nominating petitions

the names of 28 presidential electors pledge to cast their votes for Robert F.

Kennedy Jr., and Nicole Shanahan for the office of President and Vice President of

the United States in the 2024 electoral college.

29.     Presidential candidates for the major political parties are not required

to publicly name their slates of presidential electors until after their national

nominating conventions held in July and August of a presidential election year.

30.     Providing independent presidential candidates less time to select their

slate of presidential electors is an unequal application of the law.

31.     Independent presidential candidates have less time than presidential

candidates for the major political parties to discover any fact which would

disqualify an elector from serving in New York's electoral college.

32.     If it is discovered that a presidential elector is not qualified to serve as

a presidential elector after their name has been printed on a nominating petition,

the disqualification threatens to invalidate the entire nominating petition and deny

ballot access to an independent presidential candidate in New York.

33.     Candidates seeking the nomination of a major political party are not

required to name their slate of presidential electors in New York until after

receiving their party's nomination and access to New York's general election ballot.

34.    The Equal Protection Clause requires that independent presidential candidates cannot be required to name their slate of presidential electors until after they have been certified for the New York ballot and at the same time as presidential nominees for the major political parties.

35.    The first date Plaintiff was permitted to circulate nominating petitions was Tuesday, April 23, 2024.

36.    Plaintiff is required file with NYSBE Defendants nominating petitions containing a minimum of 45,000 valid signatures from registered voters of the state of New York on nominating petitions no later than May 28, 2024.

37.    Voters are required to personally sign the nominating petition.

38.    Either the voter or the person circulating the nominating petition or some other person may record the printed name, street address and city or town (or county for voters registered in New York city) of the registered voter and the date the voter signed the petition.

39.    Other than the voter's signature and the date, Plaintiff is permitted to correct the street address and city or town (or county if the voter is registered in New York city) for voters.

40.     Failure to record the exact name and street address and city or town (or county for voters registered in New York city) as recorded on the voter's registration record threatens to invalidate a signature if the signature is subject to a private challenge after the nominating petitions are filed by Plaintiff on May 28, 2024.

41.     The New York voter file does not exclusively require voters to be identified by their city or town of residence.

42.     Significant portions of the New York voter file designate voters by the village of their residence.

43.     The New York voter file does not conform to the rules governing the designation of voters by only their city or town on nominating petition.

44.     The failure of the New York voter file to comply with the city or town designation of registered voters makes it impossible for Plaintiff to validate nominating petition signatures prior to filing with the NYSBE Defendants. Plaintiff has hired the most accurate and reliable petition verification firm to report to Plaintiff with a 5% margin of certainty the number of valid signatures collected in each state, including New York.

45.     Because Plaintiff cannot validate the required city or town designation of voters, Plaintiff must collect many thousands of additional petition signatures to

compensate for the inability for Plaintiff to correct a voter's recorded village with the required city or town designation.

46.    Furthermore, even if Plaintiff can correct a recorded village with the corresponding city or town, the discrepancy between the nominating petition and the New York voter files threatens to trigger a large number of unnecessary and invalid specific challenges to Plaintiff's nominating petition signatures.

47.    The fact the New York voter file does not limit its data to city or town designations for registered voters, the NYSBE Defendants lack any legitimate state interest to continue to enforce the challenged restriction of Section 6-130 of the New York Election Code.

48.    Plaintiff is utilizing volunteer and professional petition circulators in New York to collect the required number of 45,000 valid petition signatures to secure access for Robert F. Kennedy Jr., and Nicole Shanahan for New York's 2024 general election ballot.

49.    The United States Supreme Court has established the First and Fourteenth Amendments to the United States Constitution guarantees Plaintiff the right to use and compensate professional petition circulators to assist in the collection of the required number of valid petition signatures to secure ballot access for New York's 2024 general election.

50.     Defendants are charged with enforcing a limit on the established right to compensate professional petition circulators through a ban on compensating professional petition circulators based on the number of valid petition signatures collected – the Valid Per-Signature Compensation Ban.

51.     As a direct and proximate result of New York's ban on valid per-signature compensation, Plaintiff is forced to compensate professional petition circulators $90.00 per hour for the collection of nominating petition signatures.

52.     Plaintiff is required to pay professional petition circulators no matter how few signatures a circulator collects.

53.     If a petition circulator reports to Plaintiff that he/she worked 8 hours, at $90.00 per hour and only collected 1 signature, Plaintiff is legally required to pay that petition circulator $720.00 for a single signature.

54.     While Plaintiff may terminate the services of a petition circulator who collects only 1 signature during an 8-hour shift, Plaintiff is still legally required to pay that circulator $720.00 for that single signature.

55.     Under a valid per-signature compensation model, that single signature, if valid, would only cost Plaintiff about $12.00 to $15.00.

56.     New York's Valid Per-Signature Compensation Ban, forces Plaintiff to provide compensation for circulators who engage in fraud.

57.     New York's ban on valid per-signature compensation imposes the only compensation model which requires Plaintiff to compensate petition circulators who engage in fraud.

58.     Because Plaintiff is required to compensate petition circulators for fraud, New York's ban on valid per-signature compensation encourages fraud.

59.     New York's Valid Per-Signature Compensation Ban permits Plaintiff's political adversaries to infiltrate Plaintiff's petition drive, engage in fraud and then force Plaintiff to compensate intentional petition fraud and sabotage with full compensation, all of which has the knock-on benefir for Plaintiff's political enemies of reducing Plaintiff's campaign war-chest.

60.     Meridian Strategies and Dark Horse Strategies are petition firms, aligned with the Democratic National Committee and prominent Democrats within the state of New York.

61.     Plaintiff was not aware of the political agenda of Meridian Strategies and Dark Horse Strategies before they were hired to circulate Plaintiff's nominating petitions in New York.

62.     New York Times reporters discovered and reported on Meridian Strategies and Dark Horse Strategies petition circulators engaged in actual and verbal fraud in the circulation of Plaintiff's nominating petitions.

63.     The New York Times reported witnessing Meridian Strategies and Dark Horse Strategies petition circulators: (1) folding over the top of Plaintiff's nominating petition to obscure the name of Robert F. Kennedy Jr.; and then (2) telling voters that signing the petition was to support the progressive movement.

64.     Plaintiff has discovered nominating petitions with obvious folds at the top of the nominating petition by Meridian Strategies and Dark Horse Strategies petition circulators which contain over 8,000 petition signatures.

65.     Plaintiff was forced to provide full compensation to Meridian Strategies and Dark Horse Strategies for the 8,000 fraudulent "fold-over" nominating petition signatures.

66.     Plaintiff is excluding all 8,000 fraudulent nominating petition signatures from the filing to be made with NYSBE Defendants on May 28, 2024.

67.     Furthermore, because the New York Times reporters reported that Meridian Strategies and Dark Horse Strategies petition circulators also approached voters with an arguably false premise for the purpose of Plaintiff's nominating petitions, Plaintiff has excluded 100% of the nominating petition pages circulated by these Democratic petition circulators.

68.     The total number of nominating petition signatures collected by Meridian Strategies and Dark Horse Strategies is over 30,000.

69.     Despite Plaintiff's decision to not use/file any nominating petition signatures collected by Meridian Strategies and Dark Horse Strategies, as a sole result of New York's Valid Per-Signature Compensation Ban, Plaintiff is still forced to provide full compensation to Meridian Strategies and Dark Horse Strategies petition circulators for the time they spent engage in fraudulent conduct.

70.     The total cost to Plaintiff for the fraudulent signatures collected by Meridian Strategies and Dark Horse Strategies petition circulators is approximately $313,000.00.

71.     Under the New York Election Code, Section 6-140(1)(b) any signature collected after a petition circulator signs a designating or nominating petition for a candidate of the same office is automatically invalidated.

72.     As a result of Section 6-140(1)(b), Plaintiff's political opponents are permitted to hire Plaintiff's petition circulators and tell them to sign the nominating petition for the Green Party's presidential candidate thereby invalidating all of the nominating petition signatures subsequently collected by that petition circulator – and which Plaintiff is still required to provide full compensation to any such petition circulator, despite the invalid signatures caused by the political manipulation scheme devised by Plaintiff's political opponents.

73.     Based on information and belief, the Republican Party and/or the campaign for Donald Trump has hired Plaintiff's petition circulators and instructed

them to sign the nominating petition for the Green Party's presidential candidate as a condition precedent to receiving compensation.

74.     As a result, any petition signature subsequently collected by Plaintiff's petition circulators after they accept payment and sign the nominating petition for the Green Party's presidential candidate will be invalid unless this Court provides the requested preliminary injunctive relief to enjoin enforcement of Section 6-140(1)(b).

75.     The state of New York has no legitimate interest in the invalidation of otherwise valid nominating petition signatures collected by a petition circulator/witness who signs a nominating petition for another nominating petition for the same office.

76.     At most, the proper remedy for a petition circulator/witness signing a nominating petition for another candidate for the same office is to merely invalidate the signature of the petition circulator – not the signatures of innocent voters who properly signed Plaintiff's nominating petition and did nothing in violation of New York law.

77.     Any registered voter may file general objections to a nominating petition within 3 days after the last day to file nominating petitions.

78.     After filing general objections, specific objections to signatures, or

any other alleged defect of the nominating petition, must be filed 6 days after the

last date to file general objections.

79.     Section 6-154 of the New York Election Code sets for the

requirements to file general and specific objections to nominating petitions:

§ 6-154. Nominations and designations; objections to.

1.Any petition
or certificate filed with the officer or board charged with the duty of
receiving it shall be presumptively valid if it is in proper form and
appears to bear the requisite number of signatures, authenticated in a
manner prescribed by this chapter.

2. Written objections to any certificate of designation or nomination
or to a nominating or designating petition or a petition for opportunity
to ballot for public office or to a certificate of acceptance, a
certificate of authorization, a certificate of declination or a
certificate of substitution relating thereto may be filed by any voter
registered to vote for such public office and to a designating petition
or a petition for opportunity to ballot for party position or a
certificate of substitution, a certificate of acceptance or a
certificate of declination relating thereto by any voter enrolled to
vote for such party position. Such objections shall be filed with the
officer or board with whom the original petition or certificate is filed
within three days after the filing of the petition or certificate to
which objection is made, or within three days after the last day to file
such a certificate, if no such certificate is filed except that if any
person nominated by an independent nominating petition, is
nominated as a party candidate for the same office by a party
certificate filed, or a party nomination made after the filing of such
petition, the written objection to such petition may be filed within
three days after the filing of such party certificate or the making of
such party nomination.  When such an objection is filed,
specifications of the grounds of the objections shall be filed within six
days thereafter with the same officer or board and if specifications are

not timely filed, the objection shall be null and void.

3. Written objections to any certificate of nomination or to a certificate of acceptance, a certificate of authorization, a certificate of declination or a certificate of substitution relating to a special election held pursuant to paragraph b of subdivision three of section forty-two of the public officers law may be filed by any voter registered to vote for such public office. Such objections shall be filed with the officer or board with whom the original certificate is filed within one day after the filing of the certificate to which objection is made, or within one day after the last day to file such a certificate, if no such certificate is filed. When such objections are filed, specifications of the grounds of the objections shall be filed within three days thereafter with the same officer or board and if specifications are not timely filed, the objections shall be null and void.

* 3. (a) Any person filing general objections to any designating petition, independent nominating petition or certificate of nomination or ballot access document who thereafter files specifications of his or her objections to any such document shall do so in accordance with the provisions of this subdivision. All such specifications shall substantially comply with the following requirements:

(i) for specifications relating to any petition, the volume number, page number, and line number of any signature objected to on any petition shall be set forth in detail. In addition, any portion of any petition or any signature line or witness statement objected to shall be specifically identified and reasons given for any such objection;

(ii) the total number of signatures objected to shall be set forth and all objections relating to a single signature line should be grouped together; and

(iii) symbols and/or abbreviations may be used to set forth objections, provided that a sheet explaining the meaning of any such symbols and/or abbreviations is attached to the specifications.

(b) No specifications of objections to any petition, certificate of nomination or ballot access document will be considered unless the

25

objector filing the specifications personally delivers or mails by overnight mail a duplicate copy of the specification to each candidate for public office named on the petition. Objections and specifications to a petition for an opportunity to ballot must be served on the persons named as the committee to receive notices. In the case of a petition containing candidates for party positions, service of the specifications shall be made on either the named candidates or the first person named on the petition's committee to fill vacancies. Service shall be made on or before the date of filing of any specifications with the officer or board. Proof of service shall accompany the specifications or be received by the end of two business days following the filing of the specifications, whichever is later.

4. (a) Such officer or board shall give notice by overnight mail to the objector and the candidate named in such petition or certificate of the date or dates on which such officer or board shall consider the specifications filed, and board findings, the result of and research of the specifications, and shall make a determination as to the sufficiency of such petition or certificate. Copies of the board's research of specifications shall accompany such notice. Such notice may be given by electronic correspondence in lieu of overnight mail with the consent of the objector or the candidate in accordance with subdivision seven of this section. Such officer or board shall provide the objector and candidate or their agent or agents an opportunity to be heard as to the validity of each specific objection. Such opportunity may be by written submission or oral presentation in the discretion of such officer or board. Such officer or board shall not deny the objector or the candidate or their agent or agents an opportunity to be present when the determination as to validity is made.

(b) For objections and specifications made to ballot access documents filed with the state board of elections, the provisions of paragraph (a) of this subdivision shall apply. However, the opportunity to be heard as to the validity or invalidity of such specifications shall be provided in a hearing which precedes any meeting of the state board's commissioners at which determinations will be rendered.

5. When any determination is made that a certificate or petition is sufficient or insufficient, such officer or board shall give notice of the determination forthwith by mail to each candidate named in the

petition or certificate, and, if the determination is made upon specified objections, the objector shall be notified. Such notice may be given by electronic correspondence in lieu of mail with the consent of the candidate or the objector in accordance with subdivision seven of this section. Such candidate or objector may designate an attorney or agent to receive any such notice and/or determination on his or her behalf. Any such designation shall be in writing and include the name, address, email and telephone number of any such attorney or agent, and any such attorney and/or agent shall be eligible to represent any such candidate or objector in any proceeding relating to the specifications.

6. Nothing in this section shall be construed to require an objection or hearing if the board of elections by majority vote determines that a filing does not meet the criteria of subdivision one of this section to be presumptively valid.

7. For the purposes of this section, a candidate or objector shall be deemed to have consented to electronic correspondence if, having been advised conspicuously that enrollment or registration is voluntary and that they may continue to receive notices by mail as provided in this section, they instead affirmatively choose to receive such notices by electronic correspondence only.

80.    The private challenge requires Plaintiff to pay for the validation of their own petition signatures.

81.    Upon a challenge to Plaintiff's nominating petitions, Plaintiff is required to spend funds for: (1) fees, costs, travel and accommodation for legal counsel; (2) travel and accommodation of witnesses, including any and all of Plaintiff's petition circulator who will be subpoenaed with the hope by Plaintiff's political adversaries that a large number of such petition circulators will fail to comply thereby invalidating all petition signatures collected by any such petition

circulator; (3) compensable time for handwriting experts and other witnesses; (4) hearing preparation; (5) staff; (6) process servers' fees and expenses; (7) photocopies; (8) meals; (9) legal research; and (10) conference call expenses.

82.    Plaintiff has, to date (excluding the fraudulent nominating petition signatures collected by Meridian Strategies and Dark Horse Strategies petition circulators) collected and expects to file approximately 130,000 signatures with the NYSBE Defendants in May 28, 2024.

83.    Plaintiff's political opponents will have to file specific challenges equal to at least 85,000 of the signatures filed by Plaintiff.

84.    The total time required to defend over 85,000 nominating petition signatures is, at minimum, 8,500 hours of total work at approximately $350.00 per hour for a total estimated cost to defend Plaintiff's nominating petitions in the private petition challenge process of Section 6-154 of about $2,975,000.00.

85.    The imposition of costs on a candidate to secure ballot access, specifically, the cost of validating ballot access petition signatures has been held unconstitutional as a severe burden to rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

86.    In *Constitution Party of Pennsylvania v. Aichele*, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit held Pennsylvania's less burdensome petition

requirements followed by the costs of a private petition challenge process was unconstitutional under the First and Fourteenth Amendments to the United States Constitution and forced the Commonwealth of Pennsylvania to choose between the statutory formula which, in 2012, required independent presidential candidates to collect 20,601 valid petition signatures or the private challenge process used by the Commonwealth to validate petition signatures.

87.    The Commonwealth chose to retain the private challenge process to validate petition signatures and, instead, accepted the court imposed remedy of a reduced number of petition signatures third-party presidential candidates needed to collect to a flat 5,000 petition signatures.

88.    Prior to 2019, New York only required independent presidential candidates to collect 15,000 nominating petition signatures to secure ballot access.

89.    NYSBE Defendants must be required to accept either the reduced 15,000 valid nominating petition signatures for independent presidential candidate ballot access or forego the private challenge system to validate nominating petition signatures in favor of in-house validation by the New York State Board of Elections staff.

90.    The combination of the increased 45,000 valid signatures now required for ballot access for independent presidential candidates and the private challenge process to validate petition signatures imposes a far more severe burden

on core political speech protected under the First and Fourteenth Amendments to the United States Constitution than the facts confronted by the district court and Third Circuit in *Constitution Party of Pennsylvania v. Aichele*.

91.    Plaintiff has no other adequate remedy at law.

### COUNT I
(First & Fourteenth Amendments to the United States Constitution)

92.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

93.    In order to secure ballot access in New York, Plaintiff must collect and file 45,000 valid petition signatures and file them with NYSBE Defendants within a short 5-week window concluding on May 28, 2024.

94.    On top of the requirement to collect 45,000 valid signatures showing Robert F. Kennedy Jr., and Nicole Shanahan has sufficient support in the state to required ballot access for the 2024 general election ballot, Defendants impose a witches brew of rules which intentionally act to render otherwise valid petition signatures invalid and the collection of the nominating petition signatures dramatically more expensive with the intent not to keep just frivolous candidates off the general election ballot – but any independent presidential candidate off New York's general election ballot.

95.    In addition to the cost of securing 45,000 valid signatures, Plaintiffs are also required to bear the substantial costs of defending their nominating petition signatures through a private challenge system which has, in tandem with a

high signature collection requirement, been held unconstitutional under the First and Fourteenth Amendments to the United States Constitution in Pennsylvania by federal courts.

96.    The cost of collecting enough signatures to survive a challenge by private voters under New York's excessively restrictive ballot access rules cost Plaintiff over $1.1 million.

97.    The cost of defending and validating Plaintiff's nominating petition signatures will cost over $2.9 million dollars.

98.    In tandem, Sections 6-142 and 6-154 operate to impose a severe burden on rights guaranteed to Plaintiff and the voters of New York under the First and Fourteenth Amendments to the United States Constitution for which Plaintiff respectfully requests the relief detailed in this action.

## **COUNT II**
(First & Fourteenth Amendments to the United States Constitution)

99.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

100.   Section 6-140(1)(b) invalidates any signature collected by a petition circulator/witness if that petition circulator/witness signs a nominating petition for another candidate for the same office.

101.   No state interest is advanced by invaliding otherwise valid signatures by voters who have done nothing wrong and want to record their support for ballot access for the candidate of their choice.

102.   New York lacks any interest in disenfranchising New York voters to sign a ballot access petition, which is core political speech afforded the highest level of protection under the First and Fourteenth Amendments to the United States Constitution, based on the conduct of some third-party who merely offered them a clipboard with the nominating petition to sign.

103.   The only operative signatures on a nominating petition to secure ballot access are the signatures of the registered voter signing a nominating petition to support ballot access for a candidate.

104.   To the extent New York has any interest in preventing a petition circulator/witness from signing a nominating petition for another candidate of the same office, the penalty should be limited to the invalidation of the petition circulator/witness's signature from the nominating petition for another candidate – not the invalidation of hundreds of otherwise valid and constitutionally protected signatures of innocent registered voters.

105.   Section 6-140(1)(b) invite political opponents to hire Plaintiff's petition circulators and instruct them to sign a nominating petition for another candidate of the same office and thereby sabotage the ballot access efforts of a political opponent.

106.   Accordingly, Section 6-140(1)(b) is a severe burden on core political speech protected under the First and Fourteenth Amendments to the United States

Constitution for which Plaintiff respectfully requests the relief detailed in this action.

**COUNT III**

(Equal Protection Clause of the Fourteenth Amendments to the United States Constitution)

107.   Plaintiff reasserts each preceding allegation as if set forth fully herein.

108.   NYSBE Defendants require Plaintiff and independent presidential candidates to name their slate of presidential electors in April/May of a presidential election year when they only require presidential nominees for the major political parties to name their slate of presidential electors after the conclusion of the national nominating convention on or about August of a presidential election year.

109.   Further, the shorter time period to interview, vet, select and name presidential electors on an independent presidential candidate's nominating petition impose an additional fail point to invalidate a ballot access petition upon a late discovery that a named presidential electors is either disqualified to does not mee the requirements to hold the position of presidential electors – a threat not imposed against the presidential candidates of the major political parties.

110.   Accordingly, NYSBE Defendant's requirement for independent presidential candidates to name their presidential electors on their nominating petitions as a condition precedent to secure ballot access violates the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiff respectfully requests the relief detailed in this action.

## COUNT IV
(First & Fourteenth Amendments to the United States Constitution)

111.   Plaintiff reasserts each preceding allegation as if set forth fully herein.

112.   NYSBE Defendants lack any interest in invalidating a petition signature which can be identified as a registered voter of New York just because the voter records their village rather than their city or town.

113.   The New York voter file is polluted with voter registrations whose address is indicated by the village where the voter resides rather than their city or town.

114.   Because the New York voter file does not conform with NYSBE Defendant's ballot access rule that voters may only record their city or town, it is impossible for Plaintiff to validate, in advance such voter's signatures, causing Plaintiff to have to collect many thousands of additional signatures on nominating petitions than otherwise required.

115.   Further, the failure of the New York voter file to record only the city or town of registered voters makes it impossible for Plaintiff to correct a voter's recordation of a village to the correct city or town as required by NYSBE Defendants.

116.   The fact that the New York voter file includes village designations rather than exclusively city and town designations, demonstrates Section 6-130 fails to advance any legitimate state interest sufficient to save the requirement from constitutional scrutiny.

117.   The inability of Plaintiff to either validate and/or correct signature lines because the New York voter file does not conform to ballot access rules, is a severe burden on rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution for which Plaintiff respectfully requests the relief detailed in this action.

## COUNT V
(First & Fourteenth Amendments to the United States Constitution)

118.   Plaintiff reasserts each preceding allegation as if set forth fully herein.

119.   The ban on Valid Per-Signature Compensation Ban requires Plaintiff to provide full compensation for the time petition circulators engage in petition fraud.

120.   The criminal sanctions imposed under Section 17-122(4) of the New York Election Code dramatically and severely increased the costs of collecting nominating petition signatures.

121.   The criminal sanctions imposed under Section 17-122(4) of the New York Election Code requires Plaintiff to provide full compensation to petition

circulators aligned with political opponents who engage in petition fraud rendering their nominating petition signatures of no value.

122.   The Valid Per-Signature Compensation Ban fails to advance any legitimate state interest because it requires compensation to be paid to petition circulators who engage in petition fraud.

123.   The Valid Per-Signature Compensation Ban reduces the scope of the constitutional right to compensate professional petition circulators, in the most efficient manner possible, under the First and Fourteenth Amendments to the United States Constitution for which Plaintiff respectfully requests the relief

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.   Enter emergency preliminary injunctive relief enjoining NYSBE Defendants from enforcing Section 6-140(1)(b) of the New York Election Law to the extent it requires the invalidation of petition signatures on a nominating petition other than petition signatures of a petition circulator/witness recorded on a nominating petition for a different candidate for the same office as for Plaintiff's nominating petition.

2.   Enter emergency preliminary injunctive relief enjoining NYSBE Defendants from enforcing Section 6-130 of the New York Election Law to the extent it prohibits the validation of a registered voter's petition signature due to

36

incorrect "town or city" in the required space on the said signature line, so long as that signer's correct village is indicated in that space.

3.     Enter emergency preliminary injunctive relief enjoining NYSBE Defendants from enforcing the requirement to collect 45,000 valid signatures on nominating petitions to secure ballot access for independent presidential candidates for the 2024 general election ballot.  NYSBE Defendants may enforce the pre-2022 requirement to collect 15,000 valid signatures on nominating petitions for independent presidential candidates to secure ballot access for the 2024 general election ballot.

4.     Enter permanent injunctive relief enjoining NYSBE Defendants from enforcing Section 6-140(1)(b) of the New York Election Law to the extent it requires the invalidation of petition signatures on a nominating petition other than petition signatures of a petition circulator/witness recorded on a nominating petition for a different candidate for the same office as for Plaintiff's nominating petition.

5.     Enter permanent injunctive relief enjoining NYSBE Defendants from enforcing Section 6-130 of the New York Election Law to the extent it prohibits the validation of a registered voter's petition signature due to incorrect "town or city" in the required space on the said signature line, so long as that signer's correct village is indicated in that space.

6.     Preliminarily and permanently enjoin NYSBE Defendants from enforcing the requirement for independent presidential candidates to name their slate of presidential electors prior to the time when presidential candidates of the major political parties must do so, during a presidential election year.

7.     Permanently enjoin Defendant James from enforcing criminal sanctions for violation of the Valid Per-Signature Compensation Ban imposed under Section 17-122(4) of the New York Election Law.

8.     Declare Sections 6-142 and 6-154 of the New York Election Law, acting in tandem, unconstitutional.

9.     Permanently enjoin NYSBE Defendants from enforcing either Section 6-142 of the New York Election Law imposing the requirement to collect 45,000 valid signatures on nominating petitions for independent presidential candidates to secure ballot access, or Section 6-154 of the New York Election Law permitting registered voters to challenge the nominating petitions of independent presidential candidates.

10.     Award such other and further relief as the Court deems proper and just.

11.    Award Plaintiff reasonable attorney fees and costs associated with the

prosecution of this action pursuant to 42 U.S.C. § 1988.

Respectfully submitted,


Dated:  May 20, 2024            __/s/ Gary L. Donoyan_____
                               Gary L. Donoyan, Esq.
                               Law Office of Gary L. Donoyan
                               *Counsel for Plaintiff*
                               565 Plandome Road #209
                               Manhasset, NY  11030
                               516.312.8782
                               gdonoyan@verizon.net


                               __/s/ Paul A. Rossi_____
                               Paul A. Rossi, Esq.
                               *Pro Hac Vice* Admission Pending
                               *Counsel for Plaintiff*
                               IMPG Advocates
                               316 Hill Street
                               Suite 1020
                               Mountville, PA  17554
                               717.961.8978
                               Paul-Rossi@comcast.net