UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAM KENNEDY, AMERICAN VALUES 2024, and JEFFREY ROSE,<br><br>     Plaintiffs,<br><br>-against-<br><br>HENRY T. BERGER, in his official capacity as the Co-Chair of the New York State Board of Elections; PETER S. KOSINSKI, in his official capacity as the Co-Chair of the New York State Board of Elections; ESSMA BAGNUOLA, in her official capacity as a Commissioner of the New York State Board of Elections; ANTHONY J. CASSALE, in his official capacity as a Commissioner of the New York State Board of Elections; KRISTEN ZEBROWSKI STAVISKY, in her official capacity as Co-Executive Director of the New York State Board of Elections; RAYMOND J. RILEY, III, in his official Capacity as Co-Executive Director of the New York State Board of Elections; and, LETITIA JAMES, in her official capacity as the Attorney General of the state of New York,<br><br>     Defendants. | Case No. 1:24-cv-03897-ALC<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF A PRELIMINARY INJUNCTION** |

Gary L. Donoyan, Esq.
Law Office of Gary L. Donoyan
565 Plandome Road #209
Manhasset, NY 11030
(516) 312.8782
gdonoyan@verizon.net

*Counsel for Team Kennedy*

Paul A. Rossi, Esq.
*(Pro Hac Vice Admission Pending)*
IMPG Advocates
316 Hill Street Suite 1020
Mountville, PA 17554
(717) 961-8978
Paul-Rossi@comcast.net

*Counsel for Team Kennedy*

| | |
|---|---|
| Jim Walden, Esq.<br>Walden Macht Haran & Williams LLP<br>250 Vesey Street, 27th Floor<br>New York, NY 10281<br>(212) 335-2030<br>jwalden@wmhlaw.com | Jed Rubenfeld, Esq.<br>1031 Forest Rd.<br>New Haven CT 06515<br>(203) 432-7631<br>jed.rubenfeld@yale.edu |
| *Counsel for Team Kennedy* | *Counsel for AV2024, Jeffrey Rose* |

# **TABLE OF CONTENTS**

**Pages**

PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION FOR A PRELIMINARY INJUNCTION ............................................................... 1

I.   The *Rooker-Feldman* Doctrine Does Not Bar This Action. ................................................ 1

II.  The Anti-Injunction Act Does Not Bar This Action. .......................................................... 1

III. Collateral Estoppel and Res Judicata Do Not Bar This Action. ......................................... 2

   A.   Plaintiffs Were Not Parties to the State Court Litigation. ........................................ 2

   B.   Collateral Estoppel Does Not Apply to Issues of Law ............................................. 5

IV.  *Colorado River* Abstention Is Inapplicable Here. ............................................................... 5

V.   Plaintiffs Have Established a High Likelihood of Success on the Merits. .......................... 7

   A.   The Residence Requirement Is a Severe Burden. .................................................... 7

   B.   The Residence Requirement Cannot Satisfy Even *Anderson* Scrutiny. .................. 8

VI.  The Residence Requirement Violates the Qualifications Clause. ....................................... 9

VII. Irreparable Harm / Mootness. ............................................................................................... 9

VIII. The Equities Sharply Favor Plaintiffs. ............................................................................... 10

CONCLUSION .............................................................................................................................. 10

## <u>PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORTOF THEIR MOTION FOR A PRELIMINARY INJUNCTION</u>

For months, through a proxy campaign, the Democratic Party has waged a war to keep Robert F. Kennedy, Jr. and other third-party candidates off this state's ballot, including through vexatious litigation. They have benefitted from the fact that New York has elected judges, many of whom hail from the very party funding the litigation. Their recent "victory" was rendered by a panel of five judges, four of whom were Democrats, with the only Republican abstaining.

Now, days away from securing their majority-party monopoly on the ballot—which would make New York the only state in the nation to have no third-party candidate for President on the ballot—they claim their conflict-ridden judges should be the sole arbiters in this fight. Defendants make arguments so contrary to law they border on frivolous. And the same is true of the proposed Objector-Intervenors.

### I. The *Rooker-Feldman* Doctrine Does Not Bar This Action.

Defendants' primary argument is that this action is barred by the *Rooker-Feldman* doctrine. (ECF No. 46, at 3, 12-15.) Not at all. Under controlling Second Circuit precedent, *Rooker-Feldman* "does not apply" where a "state-court appeal remains pending":

> The Supreme Court has emphasized that *Rooker-Feldman* deprives a federal court of jurisdiction only if the federal suit is filed "after the state proceedings ended." ***If a … state-court appeal remains pending …, the state-court proceedings have not ended and* Rooker-Feldman *does not apply.***

*Hunter v. McMahon*, 75 F.4th 62, 70 (2d Cir. 2023) (emphasis added) (citation omitted) (adopting "the unanimous position of every other circuit court to address" the issue). The state-court appeal remains pending here, *Cartwright et al v. Kennedy et al*, 906349-24, NYSCEF Doc. No. 189 (Notice of Appeal), so Defendants' lengthy *Rooker-Feldman* argument is meritless.

### II. The Anti-Injunction Act Does Not Bar This Action.

Similarly frivolous is the primary argument in proposed Objector-Intervenors' brief: that

1

the Anti-Injunction Act bars this suit. (ECF No. 43-2 at 5-7.) This is a Section 1983 action, and it has been the law for over fifty years that the Anti-Injunction Act does not apply to claims brought under Section 1983. *See Mitchum v. Foster*, 407 U.S. 225, 243 (1972); *see also, e.g.*, *Wimberly v. James*, No. 24-CV-3095 (LTS), 2024 WL 2853625, at *24 (S.D.N.Y. June 3, 2024) (Anti-Injunction Act does not bar viable Section 1983 claims).

### III. Collateral Estoppel and Res Judicata Do Not Bar This Action.

Next, Defendants argue that collateral estoppel and/or res judicata bar this action. (ECF No. 46, at 15-18.) Again, Defendants ignore hornbook law.

#### A. Plaintiffs Were Not Parties to the State Court Litigation.

In New York,[1] under the doctrines of both collateral estoppel and res judicata, "the party against whom … preclusion is sought **must also have been a party to the prior litigation**." *Aspen Specialty Ins. Co. v. RLI Ins. Co., Inc.*, 194 A.D.3d 206, 213 (1st Dep't 2021) (emphasis added) (citations omitted). These doctrines "preclude[] a party from relitigating 'an issue which has previously been decided **against him in a proceeding in which he had a fair opportunity to fully litigate the point**.'" *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (emphasis added) (citation omitted); *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (same). Under this bedrock rule, res judicata and collateral estoppel have no application to either Plaintiff Jeffrey Rose or Plaintiff American Values 2024 ("AV24").

Rose is a New York voter who signed the invalidated nominating petition. AV24 is an independent political action committee. They are not parties to the state proceedings, they had no role in those proceedings, they are not in "privity" with Kennedy,[2] and they are most certainly not

---

[1] In general, "[s]tate law determines the preclusive effect of state court judgments." *Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York*, 496 Fed. Appx. 122, 123 (2d Cir. 2012).
[2] Even assuming Plaintiff Team Kennedy is in privity with candidate Kennedy (the plaintiff in the state-court case), the Court need not decide that issue, because Plaintiffs Rose and AV24 are clearly not in privity.

"relitigating 'an issue which has previously been decided against [them] in a proceeding in which [they] had a fair opportunity to fully litigate the point." *Kaufman*, 65 N.Y.2d at 455.

Defendants rely on *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005), to claim that Rose and AV24 are in privity with Kennedy because they "have the same interest as Kennedy: that he will be included on the ballot" (ECF No. 46 at 16.) But *Hoblock* (which also involved a voter and a candidate and did *not* find them in privity) expressly held that having the same interests is **insufficient** for privity: "plaintiffs in a federal suit that follows a state suit are in privity with the state plaintiffs [under New York law] where 'their interests are the same ***and [the federal plaintiffs] are controlled by the same party or parties' as the state plaintiffs***." *Id.* at 95 (emphasis added) (citation omitted). Privity exists if the third parties are mere "puppets" of the candidate, (*id*. at 96), or if the candidate's "involvement in and control of every aspect of both the state and federal actions presents a connection of much greater magnitude than identity of interest alone." *Id*. (citation omitted). "Control is thus the crux of the finding of privity in a case such as this." *Id*. (citation omitted).

Defendants bear the burden of proving privity, and they have made no showing whatsoever of such control. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 508 n.52 (2d Cir. 2019) ("the burden of proving privity and preclusion is on the party asserting that affirmative defense"). Nor could they have carried this burden. Neither Kennedy nor his campaign exercises any control over Rose or AV24, who have their own counsel in this case. *Cf. Ferris v. Cuevas*, 118 F.3d 122, 128 (2d Cir. 1997) (privity existed in part because same counsel represented both state-court and federal-court parties). In fact, AV24 is required by federal law to remain independent of Kennedy and his campaign, is prohibited from being directed by him or his campaign, and is forbidden to coordinate expenditures with him or his campaign. (*See* Second Declaration of

3

Deirdre Goldfarb at ¶ 5). AV24 complies with these independence requirements by maintaining a strict firewall between itself and the Kennedy campaign and by ensuring that any third-party vendors or consultants it hires maintain this firewall as well. *Id* at ¶ 6. Further demonstrating its independence, AV24 has supported ballot access not only for Kennedy, but for numerous other candidates and parties, some of whom are competitors of Kennedy's. *See id.*; *cf. Hoblock*, 422 F.3d at 96 (privity exists where third parties "advance only those interests that they share with the candidates").

But the real reason why preclusion doctrines have no place in this case is more fundamental. The most important right at stake in this action is not the candidate's right, but the "right of voters to associate and to have candidates of their choice placed on the ballot." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Over 100,000 New York voters have been deprived of their right to vote for the candidate of their choice. Yet not one was a party to the state proceedings. Plaintiff Rose speaks for those New York voters. They have a right to be heard, and they have every right to bring their own suit, in a court of their choice, to vindicate their own constitutional rights.

In fact, the state trial court expressly blocked the constitutional rights that Plaintiffs seek to vindicate here from being litigated in the state court.[3] As a result, little record was allowed to be made on the constitutional issues. And the Appellate Division addressed the constitutional

---

[3] The following is an excerpt from the trial transcript:
  THE COURT: When we started this proceeding … neither side talked about this being a case about constitutionality of New York State Election Law.
  MR. SAVINO: It's in our pleading.
  THE COURT: Well, I decide, as the judge, what's before the Court …. The sole issue before the Court was where Mr. Kennedy resided…. not whether or not the New York State laws are constitutional. The constitutionality of that is not before the Court, it's whether or not when he place[d] the Croton address on the Petition he actually lived there. All the testimony has been about whether or not he meets the standards, not whether or not it's constitutional. We're not going to start a constitutional trial on the last day of testimony.
(Ex. B to Chirlin Decl., Tr. Aug. 7, 2024 at 204:6-205:8.)

4

issues only in a single conclusory paragraph devoid of reasoning, facts, or analysis. *Cartwright et al. v. Kennedy et al.*, CV-24-1294, NYSCEF Doc. No. 31 at 6. Preclusion doctrines do not and cannot apply in such circumstances. *See West v. Ruff*, 961 F.2d 1064, 1065-66 (2d Cir. 1992) (preclusion inapplicable where a "party lacked a full and fair opportunity to litigate the issue or claim sought to be precluded"). A federal court should not preclude constitutional issues when the state courts have given those issues such short shrift.

### B. Collateral Estoppel Does Not Apply to Issues of Law

Defendants' collateral estoppel arguments also miss the mark because in New York, "collateral estoppel does not apply to an unmixed question of law." *Matter of McGrath v Gold*, 36 N.Y.2d 406, 411 (1975); *Nationwide Mechanical Contractors Corp. v. Hokkaido Takushoku Bank, Ltd.*, 188 A.D.2d 871, 873 (3d Dep't 1992). This action raises numerous pure questions of law—for example, whether the Residence Requirement violates the Qualifications Clause. Hence litigation of those issues cannot be precluded. *See, e.g.*, *Department of Personnel v. City Civil Service Comm.*, 94 A.D.2d 5, 7 (1st Dep't 1983) (holding that "collateral estoppel does not apply to an unmixed question of law" and "[s]ince the matter before us concerns the validity of an administrative regulation, what is involved here is a pure issue of law").

### IV. *Colorado River* Abstention Is Inapplicable Here.

Still trying to avoid the merits, Objector-Intervenors argue that this Court should abstain under *Colorado River Water Conservation District v. United States* (424 U.S. 800 (1976)), because of the pendency of the state court proceedings. (ECF No. 42 at 7-10.) But as the Supreme Court said in *Colorado River* itself, "[w]here a federal court has subject matter jurisdiction, it has a 'virtually unflagging obligation to exercise that jurisdiction,' even if an action concerning the same matter is pending in state court." *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir.

5

2022) (quoting *Colorado River*, 424 U.S. at 817).

Objector-Intervenors argue that the *Colorado River* six-factor test weighs on balance in favor of abstention, but they fail to mention that that *Colorado River* requires "extraordinary" circumstances and that the "'balance [under the six-factor test is] heavily weighted in favor of the exercise of jurisdiction.'" *Gentes v. Osten*, No. 21-2022-cv, 2022 WL 16984686, at *2 (2d Cir. Nov. 17, 2022) (quoting *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Unlike *Colorado River*, this action asks the Court to decide solely issues of federal law—indeed constitutional law—and that factor alone dictates against surrendering jurisdiction. *See Moses H. Cone*, 460 U.S. at 26 ("the presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]"); *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) ("[T]he source of law in this proceeding is the federal constitution, not state laws. Thus, the federal courts are more appropriate arbiters for this action and the presence of federal issues weighs heavily against dismissal."). Indeed, the entire six-factor test weighs heavily against abstention here,[4] so this case clearly falls under the Court's "virtually unflagging obligation to exercise [its] jurisdiction." *Mochary*, 42 F.4th at 84.

---

[4] As in *Gentes*, "the first factor (whether the controversy involves a res over which one of the courts has assumed jurisdiction) and the second factor (whether the federal forum is less inconvenient than the other forum for the parties) [are] not at issue here," but the "neutrality of a factor is a basis for retaining jurisdiction, not for yielding it," and hence "these two facially neutral factors weigh against abstention." *Gentes*, 2022 WL 16984686, at *3. The third factor—avoidance of piecemeal litigation—does not support abstention under controlling Second Circuit precedent. *See Alliance of Am. Insurers*, 854 F.2d at 603 (explaining that "[t]here is no threat of piecemeal litigation" in support of *Colorado River* abstention where "[t]he resolution of the federal constitutional questions will settle the federal issues, regardless of the outcome of the state litigation"). The fourth factor—"the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other"—may tip slightly toward Defendants, but the fifth factor—"whether federal law provides the rule of decision"—militates overwhelmingly against abstention, and the sixth—"whether the state procedures are adequate to protect the plaintiff's federal rights"—does so as well, because of the state trial court's refusal to allow litigation of the constitutional claims and the Appellate Division's brazenly conclusory, unreasoned judgment on the constitutional issues.

6

### V. Plaintiffs Have Established a High Likelihood of Success on the Merits.

Defendants' arguments on the merits—which they finally reach at page 19 of their brief—fail on both the facts and the law.

#### A. The Residence Requirement Is a Severe Burden.

First, in an effort to escape strict scrutiny, Defendants claim that the Residence Requirement does not impose a severe burden on the ground that any "reasonably diligent candidate could be expected to be able to meet the requirements." (ECF No. 46 at 19.) But that's not so. No matter how diligent, a candidate with no fixed, permanent home to which he intends to return cannot meet the Residence Requirement. Any address he puts down will fail to satisfy New York's definition of residence. With respect to all such candidates, the Residence Requirement effects total "exclusion or virtual exclusion from the ballot," which is the "hallmark of a severe burden." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020).

Kennedy's situation is illustrative. The state judge found that the address on the Kennedy petition was not Kennedy's principal, permanent home and hence failed to satisfy the Residence Requirement. But in unrebutted testimony (which the state judge did not reject), Kennedy has said that he intends to return to New York after his wife's acting career is over, *Cartwright et al v. Kennedy et al*, 906349-24, NYSCEF Doc. No. 65 (Affidavit of Robert F. Kennedy Jr.) at ¶ 27, which means that his California address also would not satisfy the Residence Requirement because it is not a place to which, "wherever temporarily located," he "always intends to return." Election Law § 1-104 (22). Thus there is a substantial possibility that Kennedy **has no home satisfying New York's Residence Requirement**. At a minimum, the Residence Requirement forces a candidate in Kennedy's position to gamble on what a state court will later say about his residence, and if he guesses wrong, it will be too late to submit a corrected petition.

In addition, Defendants offer no serious rebuttal to the danger to themselves and their families that candidates like Kennedy face when they publish a home address. In all these respects, the Residence Requirement imposes a severe burden as applied here. It is therefore subject to strict scrutiny, which it plainly cannot survive.

### B. The Residence Requirement Cannot Satisfy Even *Anderson* Scrutiny.

When a state ballot access restriction is not subject to strict scrutiny, it is tested under *Anderson* scrutiny, which is still heightened scrutiny and not, as Defendants try to portray it, a form of mere-rationality review. *See SAM Party of New York v. Kosinski*, 987 F.3d 267, 274 (2d Cir. 2021) ("lesser [*Anderson*] scrutiny is not 'pure rational basis review'"). As shown in Plaintiffs' opening memorandum, the Residence Requirement cannot satisfy even *Anderson* scrutiny, because it furthers no legitimate state interests at all.

Tellingly, Defendants cannot and do not identify a single significant state interest served by the Residence Requirement as applied in this case other than New York's purported interest in "strict compliance" with its statutory petition standards. (ECF No. 46 at 4, 8, 19.) But Defendants never come to grips with the fact that this "strict compliance" argument contradicts *Anderson* itself, which precisely held that Ohio's interest in strictly adhering to its filing deadlines could not outweigh the paramount federal, constitutional interests in allowing onto the ballot independent presidential candidates with significant electoral support. Indeed, Defendants fail to heed the core lesson of *Anderson*, which is that presidential elections are different:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus in a Presidential election a State's enforcement of more stringent ballot access requirements … has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than statewide

8

or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries.

*Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983). Defendants offer no meaningful distinction between *Anderson* and the instant case—because there is none.

## VI. The Residence Requirement Violates the Qualifications Clause.

As shown in Plaintiffs' opening memorandum, the Residence Requirement adds to the qualifications the Constitution imposes on the Presidency by requiring that presidential candidates have a permanent, fixed home. Under the Residence Requirement, an individual without such a home cannot have access to the presidential ballot. Defendants do not deny this point; they simply ignore it. This additional eligibility requirement violates the Qualifications Clause.

## VII. Irreparable Harm / Mootness.

Defendants contend that "Plaintiffs cannot identify any harm caused by Kennedy's exclusion from the ballot, given that he has suspended his campaign, endorsed another candidate, and acknowledged that he has no path to electoral victory." (ECF No. 46 at 4.) To the contrary. Kennedy has announced his withdrawal from the ballot in ten "swing" states, but he is remaining on the ballot—or trying to get on the ballot—and fighting for votes everywhere else, including New York. This case is far from moot. Kennedy's obtaining 5% of the national vote would trigger important federal legal benefits; his receiving a significant percentage of the New York vote would trigger automatic ballot access for his party in the future. *See* Election Law §§ 1-104(3), 6-128;[5]

---

[5] *See Why should you contribute to Robert F. Kennedy, Jr.'s presidential campaign?,* Kennedy/Shanahan, https://www.kennedy24.com/donate-aug31. This case is also not moot because it raises issues capable of repetition yet evading review; indeed, for this reason, even when an election is over, ballot restriction challenges are not moot. *See Anderson*, 460 U.S. at 784 n.3 (challenge to ballot restriction not moot though election over); *see also Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) ("The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues [and the] effects on independent candidacies will persist as the California statutes are applied in future elections. This is, therefore, a case where the controversy is 'capable of repetition, yet evading review.'") (cleaned up); *Lerman v. Bd. Of Elections in City of New York*, 232 F.3d 135, 141 (2d Cir. 2000) (rejecting mootness argument where election had already happened because issues were capable of repetition, and likely to evade review).

And, more fundamentally, voters have every right to vote for the candidate of their choice to express their political opinion regardless of whether that candidate has a likely path to electoral victory.

### VIII. The Equities Sharply Favor Plaintiffs.

All the equities sharply favor restoring Kennedy to New York's ballot, which must be printed in less than two weeks. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Agudath Israel v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (citation omitted). Here, the First Amendment injury will not be fleeting; it will be permanent and irrevocable. And "[n]o public interest is served by maintaining an unconstitutional policy." *Id*. at 637.

Astonishingly, Defendants suggest that Plaintiffs have somehow been dilatory because they waited until after the state court had ruled before bringing this claim. (ECF No. 46 at 1-2 ("Plaintiffs only made this claim ***after*** the Supreme Court of the State of New York issued a judgment … removing [Kennedy] from the ballot.") (original emphasis). This is upside-down reasoning. Of course, Plaintiffs made this claim only after Kennedy had been removed from the ballot. They didn't have the claim—and couldn't have brought it—until then.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant the injunction.

Dated: New York, NY  
        August 30, 2024

Respectfully submitted,

By:    */s/      Gary L. Donoyan*
Gary L. Donoyan, Esq.
Law Office of Gary L. Donoyan
565 Plandome Road #209
Manhasset, NY 11030
(516) 312-8782
gdonoyan@verizon.net
*Counsel for Team Kennedy*

   */s/      Paul A. Rossi*
Paul A. Rossi, Esq.
*(Pro Hac Vice Admission Pending)*
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA 17554
(717) 961-8978
Paul-Rossi@comcast.net
*Counsel for Team Kennedy*

   */s/      Jim Walden*
Jim Walden, Esq.
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2030
jwalden@wmhwlaw.com
*Counsel for Team Kennedy*

   */s/      Jed Rubenfeld*
Jed Rubenfeld, Esq.
1031 Forest Rd.
New Haven CT 06515
203-432-7631
jed.rubenfeld@yale.edu
*Counsel for AV2024, Jeffrey Rose*