

250 Vesey Street
27th Floor
New York, NY 10281

wmhwlaw.com
T: 212-335-2030
F: 212-335-2040

September 6, 2024

**Via ECF**
Hon. Andrew L. Carter Jr.
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Team Kennedy et al. vs. Berger et al.* (1:24-cv-03897-ALC)

Dear Judge Carter:

Plaintiffs write to address the Court's specific question, as we understood it: to adjudicate an as-applied challenge by Presidential Candidate Kennedy to New York's residency requirement, what role, if any, should it play in the Court's decision that the trial court determined that Mr. Kennedy lied about his residence, if the trial court did so determine? For four reasons, it should play none: (1) the trial court did not, in fact, find that Mr. Kennedy lied; (2) even more important, the *appellate court* did not so find and did not rest New York's exclusion of Mr. Kennedy from the ballot on the basis of any finding or claim of prevarication, rendering the entire issue irrelevant in this action; (3) the trial court's factual determinations have no preclusive effect on Plaintiffs; and (4) even assuming that the trial court found that Mr. Kennedy lied, it should not affect this Court's constitutional analysis.

1. *The Trial Court's Remit and Findings*

The trial court did not make a finding that Mr. Kennedy lied on the nominating petition, which (as an aside) he did not sign or attest. This contention has two parts:

**Remit**: The trial court—in several instances—limited its determination to whether the listed address was a bona fide residence under the Election Law and explicitly **not** about whether Mr. Kennedy intended to lie or deceive.[1] Trial Court Decision ("Tr. Dec.") at 29 ("the sole issue to be determined by this Court [is] whether the 84 Croton Lake Road address listed on the nominating petition was Kennedy's bona fide residence within the meaning of the Election Law"); *id.* at 27 ("petitioners demonstrated by clear and convincing evidence that the 84 Croton Lake Road address listed on the nominating petition was not Kennedy's bona fide residence within the meaning of the Election Law"); *id.* at 24 ("the Court's inquiry [does not] involve consideration of whether Kennedy's use of that address was intended to, or did in fact, mislead or confuse signatories to the petition").

**Findings**: The closest the trial court came to suggesting that Mr. Kennedy lied was to assert that (1) Mr. "Kennedy's designation of the 84 Croton Lake Road address as his 'place of residence' was a false statement" (Tr. Dec. at 32-33) and (2) the address was a "'sham' address that he

---

[1] Given the specific claims in the Objectors' invalidating petition, this made sense. The objectors' invalidating petition alleged that Mr. Kennedy used an "untrue" address for his residence. It did not allege that he "lied" or seek to disqualify him for "lying" or "deception" concerning the residence.

1

assumed for the purpose of maintaining his voter registration and furthering his own political aspirations" in New York. *Id*. at 30. We address each, in turn.

- **False statement**: Finding that the designation was a "false statement" is different from saying that Mr. Kennedy lied. The trial court focused on whether the address was a bona fide residence under the Election Law and found that it was not. There was no finding that Mr. Kennedy intended to deceive—the court explicitly declined to consider that question. *Id.* at 24. In fact, the unrebutted evidence before the trial court showed the opposite—that Mr. Kennedy had no intention to lie, and that he showed good faith by taking direction from counsel concerning what residence to list on the petition.[2] Kennedy Declaration ¶29. Decidedly absent from the trial court decision—or the evidence before this Court—is any suggestion that *Mr. Kennedy believed* the Croton Lake address was a false residence. Objectors offered no proof on this point whatsoever.

- **Sham**: The court's use of the word "sham" was specific to its conclusion that Mr. Kennedy used the address to maintain voter registration and further his political aspirations and *not* related to any intent to deceive or confuse petitioners on his nominating petition. The court's reference to a "sham" was instead used to justify its finding that, as a matter of New York law, the Croton Lake Road address was not Mr. Kennedy's bona-fide residence. *See People v. O'Hara*, 96 N.Y.2d 378, 385 (2001) (the controlling factor in determining "residence" is whether individual "manifest[ed] an intent [to reside there], coupled with physical presence 'without any aura of sham'"). Thus, the "sham" analysis focused on whether the address was his "residence" under Election Law, not whether he lied on the forms for the nominating petition. And this puts aside an obvious problem with the court's conclusion: using an address "for the purpose of maintaining his voter registration and furthering [] political aspirations" does not make an address a "sham" anyway, and no New York case supports this conclusion.

In short, the issue of Mr. Kennedy's intent was beyond the trial court's stated remit and its findings fell short of a determination on the issue.

*2. The Appellate Court Did Not Make Any Finding of Prevarication and Did Not Rest Mr. Kennedy's Exclusion from the Ballot on the Basis of Prevarication*

Focusing on the trial court misses the target anyway. This Court need not reach the question of whether the trial court found prevarication, or whether Mr. Kennedy could have been constitutionally excluded from the ballot on the basis of the trial court's finding of prevarication, because the operative judicial decision is no longer the trial court's ruling. It is the Appellate Division's. And the Third Department made absolutely no finding that Mr. Kennedy lied. It did not address the issue at all, and it did not rest its exclusion of Mr. Kennedy from the ballot in any way on the basis of any finding of prevarication.

Instead, the Appellate Division found that "petitioners have demonstrated by clear and convincing evidence that the Katonah address listed in the nominating petition was not Kennedy's residence under the Election Law." Appellate Court Decision at 5. The Appellate Division did not reject or cast any doubt on Mr. Kennedy's testimony that he intends to return to New York. Rather, the court simply stated that "'intention without residence' is unavailing" under New York Election Law. *Id.* Thus, under the Third Department's ruling, which is now operative, the trial court's

---

[2] We do not raise advice of counsel here as a "sword" to suggest that the Croton Lake address was Mr. Kennedy's factual "residence" under New York Election Law, but rather to show Mr. Kennedy's good faith.

findings, however they are understood, play no role in New York's exclusion of Mr. Kennedy from the ballot.

Under *Anderson*, this Court does not inquire into **hypothetical** state interests on the basis of which the state **might** have excluded a candidate from the ballot. It weighs the "precise state interests" actually "put forward" by the decision-making state officials. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The Third Department did not "put forward" prevarication as the basis for excluding Mr. Kennedy. Hence the question of whether Mr. Kennedy prevaricated, or of whether the trial court so found, is irrelevant here.

### 3. Trial Court's Findings Have No Preclusive Effect on Plaintiffs

Even assuming that the trial court implicitly found that Mr. Kennedy lied, the trial court's findings have no preclusive effect here and are not properly before this Court, as our reply brief argued. We briefly summarize.

The parties before this Court were not parties in the state court proceeding. Moreover, Defendants have made no showing that Plaintiffs AV2024 and Jeffrey Rose are in privity with Mr. Kennedy or the 27 electoral candidates named in the state court case. Accordingly, as a matter of black letter law, the trial court's findings have no preclusive effect. *Aspen Specialty Ins. Co. v. RLI Ins. Co., Inc.*, 194 A.D.3d 2016, 213 (1st Dep't 2021) ("the party against whom … preclusion is sought must also have been a party to the prior litigation.").

That being so, the Court must base its decision on *this* record. Objectors put no evidence of prevarication before this Court. And the Court cannot take judicial notice of the state court's adjudicated findings where they are in dispute. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in [Fed. Rule of Civil Procedure] 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source.").

### 4. Trial Court Findings Are Irrelevant to this Court's Constitutional Analysis

Supreme Court precedent requires the same result through a different lens. Simply put, the State of New York cannot remove a presidential candidate from its ballot because *it believes* he or she lied on a form. *Trump v. Anderson*, 601 U.S. 100 (2024).

In that case, the Colorado Supreme Court affirmed a trial court finding that Trump had violated his Presidential oath by inciting insurrection, which precluded him from appearing on the Colorado state ballot. The U.S. Supreme Court reversed, holding that a state could not determine eligibility for a U.S. President under the Fourteenth Amendment. *Id.* at 111 ("Because federal officers 'owe their existence and functions to the united voice of the whole, not of a portion of the people,' powers over their election and qualifications must be specifically delegated to, rather than reserved by, the States."). Thus, it stands to reason that if the Supreme Court deems a judicial finding of fomenting insurrection insufficient to justify adding eligibility or qualification requirements to a Presidential candidacy, a finding of prevarication—even if the trial court so found—would fare no better.[3]

---

[3] Further, the application and adjudication of the residence requirement here, as against Mr. Kennedy, invites the very "chaotic patchwork" that the *Trump v. Anderson* court warned against. *Id*. at 116.

If the State has a genuine interest in removing candidates from the ballot simply because they provided a false statement, the State must apply such a rule even-handedly and not in a discriminatory manner against independent candidates. Even in this election, the State has not done so. Despite being criminally convicted in the State of New York for filing false statements in an effort to deceive voters, the Republican candidate, former President Trump, remains on the New York ballot. *People v. Trump*, 2024 WL 2783752 (N.Y. Sup. Ct. May 30, 2024). It cannot be the case that a major-party presidential candidate can remain on the ballot after being criminally convicted for, effectively, election fraud—yet another, independent presidential candidate can be removed by a finding he prevaricated on the state's own (extra-constitutional) residence requirement. *Anderson*, 460 U.S. at 793-94 ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties."). The Objectors' justification for this result is Cheshire-cat logic at work.

Nor is it consistent with law. The Third Department case, *Matter of Maloney v. Ulster County Bd. of Elections*, is directly on point. 21 AD.3d 692 (3d Dep't 2005) *lv denied* 5 N.Y.3d 706 (2005). There, an independent party candidate filed a nominating petition with an erroneous address and refused to correct it after the Board of Elections brought it to his attention. *Id*. (the "fact that respondent did not file corrective affidavit after being notified of error was of no consequence"). The court said—in no uncertain terms—that falsity in the residence requirement cannot be a basis for disqualification unless a court finds "an intent by the candidate to mislead or confuse signatories as to his or her identity, []or a showing that the error would or did tend to mislead or confuse anyone." *Id*. at 693. The New York Court of Appeals has adopted this same reasoning. See *Ferris v. Sadowski*, 409 N.Y.S.2d 339 (1978) ("Where, as here, there is no proof of any intention on the part of the candidate or of those who have solicited signatures on his behalf to mislead or confuse, and no evidence that the inaccuracy did or would lead or tend to lead to misidentification or confusion on the part of those invited to sign the petition or seeking to verify his qualification, we hold that there was warrant for the conclusion that the petition should not be invalidated."). The trial court below made no such findings, because Objectors offered not a scintilla of proof on this crucial requirement. Without it, there should have been no disqualification by the trial court. Putting that aside, a finding of—what is essentially—an immaterial falsehood should not impact this Court's constitutional analysis.

Under this reasoning, it is of little significance whether Mr. Kennedy lied as to his residence if the signatories were all aware of his identity. The "function" of the state's requirement is served. Moreover, from the state's perspective in protecting this interest, there is little difference between a candidate who deliberately lists an old address at which he no longer resides (e.g., *Maloney*) and a candidate who deliberately lists an address where he never resided (as determined under New York Election Law). In each case, the candidate listed an address that a trial court deemed was not his residence. But in each case, there was no showing of an intent to deceive, mislead or confuse. The fact that the residence was "false" or a "lie" should have no bearing on the analysis of the state's interest if the voters were not deceived as to the candidate's identity. This is especially true, here, where Mr. Kennedy's "residence" is irrelevant to his eligibility or qualifications to run for the office of U.S. President. As the Supreme Court said in *Anderson*, strict compliance with petitioning requirements is not a state interest sufficient to outweigh the First and Fourteenth Amendment rights at stake when an independent presidential candidate is barred from the ballot. 460 U.S. at 795.[4]

---

[4] To be clear, New York courts have repeatedly said the residence requirement should be applied with flexibility, not rigidity (despite Defendants' claim to the contrary). *See, e.g., Vescera v, Karp*,

And one last, critical point bears mention.  Fundamentally, *Anderson-Burdick* protects the rights of ***voters***, in particular the "right of voters to … have candidates of their choice placed on the ballot." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  For this reason too, the issue of prevarication should not figure in the Court's decision.  There is no evidence that the address on the Kennedy petition mattered in the slightest degree to even a single person who signed that petition.  To exclude Mr. Kennedy from the ballot on the basis of supposed "prevarication" about that address would be to trammel and utterly disregard the First Amendment rights of over 100,000 voters.

For reasons stated above, and those previously advanced, we respectfully request that this Court restore the *status quo ante* and reinstate the Board of Elections determination to validate Mr. Kennedy's nomination for placement on New York's ballot for the Office of the President of the United States.

Respectfully submitted,

 */s/ Jim Walden*
Jim Walden
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY 10281
jwalden@wmhwlaw.com
*Counsel for Team Kennedy*

 */s/ Gary L. Donoyan*
Gary L. Donoyan
Law Office of Gary L. Donoyan
565 Plandome Road #209
Manhasset, NY 11030
gdonoyan@verizon.net
*Counsel for Team Kennedy*

*/s/ Jed Rubenfeld*
1031 Forest Rd.
New Haven, CT 06515
Jed.rubenfeld@yale.edu
*Counsel for AV2024, Jeffrey Rose*

cc:   Counsel of record

---

131 A.D.3d 1338 (4th Dep't 2015) ("strict construction [of ballot access requirements] should be avoided if it would lead to injustice in the electoral process or the public perception of it"); *Ferris v. Sadowski*, 45 N.Y.2d 815, 817 (1978) (petition should not be invalidated where there is no evidence that the inaccuracy did or would lead or tend to lead to misidentification or confusion on the part of the petition signers); *Bressler v. Holt-Harris*, 37 A.D.2d 898, 899 (3d Dep't 1971) *aff'd*, 30 N.Y.2d 529 (1972) (affirming residence for voting registration for a one-room walk-up where voter "rarely, if ever" slept or ate, which his family never used, and to which "his political mail" was delivered).