STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-6236

September 6, 2024

**BY ECF**
Hon. Andrew L. Carter, Jr.
United States District Court for the Southern District of New York
40 Foley Square, New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov

RE:   *Team Kennedy, et al. v. Berger, et al.*, No. 24-cv-03897-ALC (S.D.N.Y.)

Dear Judge Carter:

This Office represents defendants Henry T. Berger and Peter S. Kosinski, in their official capacities as Co-Chairs of the New York State Board of Elections (the "Board"); Essma Bagnuola and Anthony J. Casale, in their official capacities as Commissioners of the Board; Kristen Zebrowski Stavisky and Raymond J. Riley, III, in their official capacities as Co-Executive Directors of the Board; and Letitia James, in her official capacity as the Attorney General of the State of New York (together, "Defendants"), in the above-referenced action.

We write pursuant to Your Honor's instruction at the September 4, 2024 argument on Plaintiffs' motion for a preliminary injunction to provide the Court with a letter brief on the issues of whether the finding of the New York Supreme Court, Albany County ("State Court"), that candidate Robert F. Kennedy, Jr. intentionally provided an erroneous residence address on his nominating petitions to appear on the New York ballot for the November 2024 general election as a candidate for President of the United States[1] is relevant to the Court's constitutional analysis with respect to the present motion, and if that finding is relevant, in what form can the Court consider it.

**I.      The Court Does Not Need To Address This Issue**

Plaintiffs have failed to meet their burden to demonstrate they are entitled to a preliminary injunction for reasons unrelated to the State Court's finding that Kennedy included inaccurate information on his nominating petition. *See* ECF No. 46 (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Defs. Br.") at 11; at Sections II(C), III, IV); *see also Ambiance, Inc. v. Commodore Gen. Ins. Co.*, 553 F. Supp. 285, 288 (S.D.N.Y. 1982) (denying request for injunctive relief involving a state court proceeding on comity and

---

[1] The State Court concluded that "Based upon the clear and convincing credible evidence presented in this case, the Court finds that the [Katonah] address listed on the nominating petition was not Kennedy's bona fide and legitimate residence, but merely a 'sham' address that he assumed for the purpose of maintaining his voter registration and furthering his own political aspirations in this State." *Cartwright v. Kennedy*, No. 906349-24, 2024 WL 3894605, at *14 (Sup. Ct. Albany Cnty. Aug. 13, 2024). The Third Department affirmed. *Cartwright v. Kennedy*, No. CV-24-1294, 2024 WL 3977541, at *3 (3d Dep't Aug. 29, 2024).

Hon. Andrew L. Carter, Jr., U.S.D.J.                                                                                              Page 2 of 5
September 6, 2024

federalism grounds).

As set forth in Defendants' Brief, it is well-settled that district courts should not change election rules during the period just prior to an election to avoid disrupting the election process, creating problems for officials administering the election process, making unreasonable demands on the State, or causing voter confusion. Defs. Br. at 11 (citing, *inter alia*, *Purcell v. Gonzalez*, 549 U.S. 1 (2006)), *id*. at 23-25 ("The Public Interest Does Not Weigh in Favor of a Preliminary Injunction"). In short, district courts should not issue orders making last-minute changes to state election procedures that risk chaos in the election process.

It is undisputed that granting the relief Plaintiffs seek severely risks such chaos. The Board is under a statutory deadline to certify the final ballots for the November 2024 general election in *five days*, i.e. by September 11, 2024. An injunction by this Court ordering the Board to include Kennedy on the ballot, when there is already a binding State Court decision ordering the Board to exclude Kennedy from the ballot, would result in a situation where the Board cannot certify the ballot without violating one of two opposing orders. The relief Plaintiffs seek threatens the Board and indeed the entire State with potential chaos with respect to the upcoming election.[2] As a result, the public interest does not weigh in favor of a preliminary injunction. *Id*. at 23-25.

Further, Plaintiffs have failed to demonstrate irreparable harm. Notably, Plaintiffs were in a position to avoid the issues of preclusion arising from the State Court decision that are now before the Court altogether, but chose instead to time their motion in this manner, ostensibly calculated to create their own irreparable harm. *See also* Defs. Br. at 22-23.

Given that Plaintiffs have failed to establish irreparable harm or that the public interest weighs in their favor, the Court need not address the likelihood of success on the merits. But as an additional matter, the Court should not address the merits because res judicata/claim preclusion prevents Plaintiffs and those in privity with them "'from raising a claim that was or could have been raised in a prior suit.'" Defs. Br. at 17 (quoting *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007)). All of the claims Plaintiffs raise in their preliminary injunction motion could have been, and were, decided by the State Court. *See* Defs. Br. at 17-18.

Moreover, under collateral estoppel/issue preclusion, the State Court's findings on matters of both fact *and law* are binding in this action, *Russell v. N.Y. Univ.*, No. 37, 2024 WL 1773218, at *3 (N.Y. Apr. 25, 2024), and the State Court and the Third Department already found that the residence disclosure requirement does not violate the U.S. Constitution. *See also* Defs. Br. at 15-17. Indeed, the Third Department found that the residence disclosure requirement "imposes a

---

[2] During argument, the Court asked, once the state-wide ballot is certified under the statutory deadlines, how quickly can ballots be printed. Many deadlines and activities necessary to the administration of the election are triggered by the September 11, 2024 certification of the state-wide ballot. Specific to printing for military and overseas ballots, however, there are only six business days between the county certification deadline (September 12, 2024) and the federal mailing deadline by which to mail military and overseas ballots. N.Y. Election Law §§ 4-112(1), 4-114; 52 U.S.C. 203.02(a)(8)(A). Counsel is advised by the Board that for the 2024 General Election, there are approximately 55,200 voters for whom ballots must be sent on or before the September 20, 2024 deadline. Counsel is further advised that the electronic and paper ballots are created by each of the 58 local boards of elections using the software required by their systems. Instructions and files for printing paper ballots are then either sent to a contracted vendor to be printed onto paper and returned to the county to be sent out, or in some cases, sent directly from the vendor; for these early ballots specifically, many counties print on their own. It must also be noted more generally that preparing all ballots and <u>programming and testing all voting machines cannot proceed without a certified ballot</u>.

reasonable and nondiscriminatory burden on rights under the First and Fourteenth Amendments" under the *Anderson-Burdick* framework, and that the requirement does not violate the Qualifications Clause, nor does it violate the Twelfth Amendment. *Cartwright*, 2024 WL 3977541, at *3. Although Plaintiffs claim that collateral estoppel does not apply to "unmixed" questions of law (ECF No. 54 at 5), they also claim that their challenge here – which is the same challenge that was before the State Court – is an "as applied challenge," i.e., a mixed question of fact and law.

Thus, Plaintiffs' motion for a preliminary injunction should be denied without need to reach the question of the relevance of the State Court's specific finding regarding Kennedy's intentional provision of an erroneous residence or for the Court to conduct its own *Anderson-Burdick* analysis.

## II. To The Extent the Court Reaches the Issue, the State Court's Factual Findings Necessitate Denial of Plaintiffs' Motion for a Preliminary Injunction

### A. *The State Court's Decision*

The State Court's decision to invalidate the petition under N.Y. Election Law rested on its factual findings that Kennedy provided inaccurate information on his nominating petition by listing an address that was not his residence, and Kennedy's actions were not an inadvertent mistake. *Cartwright*, 2024 WL 3894605, at *12. Whether Kennedy's actions can or should be characterized as a "lie" is beside the point. For purposes of any legal analysis under N.Y. Election Law or the U.S. Constitution, the ultimate point is that Kennedy provided inaccurate information on his ballot application, and his actions were the result of a deliberate choice, not an inadvertent mistake.

With regard to the first point, the State Court held a multi-day trial regarding whether the Katonah address listed on Kennedy's nominating petition was his residence within the meaning of N.Y. Election Law § 1-104(22). *Id*. at 1-11. The court explained that the controlling factor is that the individual must manifest an intent to reside there, coupled with physical presence without any aura of sham.[3] *Id*. at 12. The court also held that the Election Law does not preclude a person from having two residences and choosing one for election purposes, so long as the residence chosen is "one to which the candidate has legitimate, significant, and continuing attachments." *Id*. at 15. The court ultimately found that the Katonah address was not Kennedy's residence within the meaning of the Election Law. *Id*. at 13.

Then the State Court found that, because Kennedy's inclusion of the Katonah residence on his ballot petition was not an inadvertent mistake, his nominating petition should be invalidated. *Id*. at 15. Kennedy had argued to the State Court that reference to the Katonah address was not made to intentionally mislead or confuse anyone, and therefore it would be improper to invalidate his nominating petition under the precedent set by *Ferris v. Sadowski*, 45 N.Y.2d 815 (1978), and *Maloney v. Ulster County Bd. of Elections*, 21 A.D.3d 692 (2005). *See id*. The State Court rejected that argument and distinguished those cases because they both involved candidates who made "inadvertent mistakes" by listing former addresses on their nominating petitions. *Id*. Kennedy, on the other hand, did *not* make an inadvertent mistake. *Id*. He made a "deliberate choice" to list as

---

[3] To be clear, physical presence without an "aura of sham" is part of the standard for determining an individual's residence under N.Y. Election Law. It is *not* a factor as to whether listing an inaccurate residence is an "inadvertent mistake" such that a petition should not be invalidated.

his residence an address at which he had never lived, as opposed to the candidates in *Ferris* and *Maloney*, who inadvertently listed former addresses that were previously "genuine and bona fide residence[s] within the meaning of the Election Law." *Id*.

As a result, the State Court's decision turned on the factual finding that Kennedy made a "deliberate choice" to list a residence at which he had never lived on his ballot petition, rather than making an "inadvertent mistake." At the same time, the court found that it did not matter whether Kennedy intended to deceive voters; it only mattered that Kennedy provided false information and his actions were not an inadvertent mistake. *Id*.[4]

The Third Department subsequently affirmed the State Court's decision in full. *Cartwright*, 2024 WL 3977541.

### B. The State Court's Factual Findings Have Preclusive Effect

The finding that Kennedy did not properly list his residence on the nominating petition, and that this was not an inadvertent mistake, was expressly determined by the State Court, and was necessary to its determination to invalidate Kennedy's nominating petition. Our understanding of the Court's present question is what effect to afford those findings. We respectfully submit that the State Court's findings are entitled to preclusive effect under the doctrine of issue preclusion or collateral estoppel.

The preclusive effect of state decisions is governed by state law. *See Oliver v. D'Amico*, 2024 WL 2013670, at *2 (2d Cir. May 7, 2024). "In New York, issue preclusion applies if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Id*. (quoting *McKithen*, 481 F.3d at 105). Although "[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion, . . . the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." *Scuderi-Hunter v. Merklen*, 2023 WL 2572987 at *7 (N.D.N.Y. Mar. 20, 2023) (citing *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013), and *Davis v. Proud*, 2 F. Supp. 3d 460, 481 (E.D.N.Y. 2014)); *see also Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) ("The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.").

"In the context of collateral estoppel, privity does not have a single well-defined meaning." *Buechel*, 97 N.Y.2d at 304. "Rather, privity is an amorphous concept not easy of application," and includes, but is not limited to, "those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior action." *Id*. (quotation marks omitted). "In addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe

---

[4] The State Court also found that requiring strict compliance with the residence disclosure requirement does not violate the U.S. Constitution;  the court explained the State's interests in strict compliance with the residence disclosure requirement, and found that "[t]he United States Constitution cannot be construed to protect candidates from making false statements on their petitions for public office." *Id*. at 13, 15.

Hon. Andrew L. Carter, Jr., U.S.D.J.     Page 5 of 5
September 6, 2024

consequences, would be fair under the particular circumstances." *Id*. at 304-05.

      Here, there is no doubt that Defendants have met their burden under the *Buechel* test: there is an identity of issue (Kennedy's listing of the Katonah address) and that issue was decisive (it resulted in a finding that caused Kennedy to be found ineligible for the ballot), and that issue was decided against Kennedy, who is clearly in privity with Plaintiff Team Kennedy. For their part, Plaintiffs contest whether the additional parties named in the Amended Complaint, American Values 2024 ("AV2024") and Jeffrey Rose ("Rose") are in privity with Kennedy. But as *Buechel* holds, consideration includes whether AV2024, a super PAC supporting Kennedy's candidacy, or Rose, a voter and petition signatory also supporting his candidacy, have a relationship that would justify preclusion. In this case, all Plaintiffs share an interest in seeking to enjoin the State Court order so that Kennedy appears on the ballot. In any event, Kennedy himself is precluded from relitigating this issue; Plaintiffs who have been added as parties for no apparent purpose other than creating a privity argument cannot show what independent interest they have here, and most importantly, cannot show why issue preclusion would be unfair under the present circumstances.

      The Court should also view this matter through the lens of the burden that Plaintiffs would bear under State law to contest issue preclusion, to wit, demonstrating the absence of a full and fair opportunity to contest the prior determination, nor what exactly they could have or would have added to a State court litigation that concerned only Kennedy and his electors with respect to a factual finding specific to Kennedy. Plaintiffs simply have no basis to reopen a factual question decided against Kennedy, solely concerning Kennedy's actions and intentions, in a litigation against Kennedy, *based on testimony from Kennedy*.

      In short, the issue of Kennedy's intentional use of an address that was not his residence on his nominating petition and the consequence that he is thus not eligible for the New York ballot as a matter of New York State law is now determined, and this Court may not revisit that finding and conclusion.

      As a result, Plaintiffs' preliminary injunction motion should be denied. The requirement to provide accurate identifying information – which simply includes a candidate's name and address – on a nominating petition is a minimal burden. As found by the State Court, Kennedy did not provide accurate information on his nominating petition, and it was not an inadvertent mistake.

      Further, the State has a clear interest in requiring a candidate to provide accurate information on nominating petition, especially if the errors are not inadvertent mistakes. *See* ECF No. 46 at 8, 20 (discussing, *inter alia*, *Cartwright*, 2024 WL 3894605; *Matter of Gross v. Albany Cnty. Bd. of Elections*, 3 N.Y.3d 251 (2004); *Matter of Staber v. Fidler*, 65 N.Y.2d 529 (1985)). In sum, mandating strict compliance ensures the integrity of the election process by facilitating the discovery of fraud and reducing the likelihood of unequal enforcement of the law, and by ensuring the Election Law is neutrally applied.

      Thank you for Your Honor's consideration of this matter.

                                                                Respectfully submitted,

                                                               /s/ Erin R. McAlister
                                                               Erin R. McAlister

cc:     All Counsel of Record (By ECF)        Assistant Attorney General