SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

TEAM KENNEDY, AMERICAN VALUES 2024, and JEFFREY ROSE

Plaintiffs,

-against-

HENRY T. BERGER, in his official capacity as Co-Chair of the New York State Board of Elections; PETER S. KOSINSKI, in his official capacity as Co-Chair of the New York State Board of Elections; ESSMA BAGNUOLA, in her official capacity as a Commissioner of the New York State Board of Elections; ANTHONY J. CASSALE, in his official capacity as a Commissioner of the New York State Board of Elections; KRISTEN ZEBROWSKI STAVISKY, in her official capacity as Co-Executive Director of the New York State Board of Elections; RAYMOND J. RILEY, III, in his official Capacity as Co-Executive Director of the New York State Board of Elections; and LETITIA JAMES, in her official capacity as the Attorney General of the state of New York,

Defendants.

</td><td>

1:24-cv-3897 (ALC)

<u>OPINION & ORDER</u>

</td></tr>
</table>

ANDREW L. CARTER, JR., District Judge:

"It is to be expected that [] voter[s] hope[] to find on the ballot a candidate who comes near to reflecting [their] policy preferences on contemporary issues. The right to vote is heavily burdened if that vote may be cast only for major-party candidates at a time when other parties or other candidates are clamoring for a place on the ballot." *Anderson v. Celebrezze*, 460 U.S. 780, 787-788 (1983) (internal citations omitted); "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and

1

honest and if some sort of order, rather than chaos, is to accompany the democratic

processes." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal citations omitted).

One week after the Supreme Court of the State of New York ordered Robert F. Kennedy

Jr., a candidate of the We The People Independent Body for Public Office of President of the

United States ("We The People") nomination petition to be invalidated, Team Kennedy, America

Values 2024, and Jeffery Rose brought this emergency request for preliminary injunction,

approximately twenty days before New York will begin printing and mailing out ballots, asking

this Court to enjoin the New York State Board of Elections' ("NYSBOE") enforcement of the

State Court's decision and order the NYSBOE to keep Kennedy on the ballot. For the reasons set

forth below, this Court denies this extraordinary relief. Plaintiffs have not demonstrated a

likelihood of success on a constitutional injury.

## **BACKGROUND**

The following facts are drawn from the Original Complaint (ECF No. 1), First Amended

Complaint ("FAC"), Plaintiffs' memorandum in support of a temporary restraining order and/or

preliminary injunction (ECF No. 34), Defendants' memorandum in opposition of Plaintiffs'

motion for a preliminary injunction (ECF No. 46), Plaintiffs' reply memorandum in further

support of a preliminary injunction (ECF No. 54), Defendants' memorandum in opposition to

proposed Plaintiff-Intervenors motion to intervene (ECF No. 51), the State Court trial testimony

(ECF No. 47_Ex.1), and the documents relied upon therein.

### I.    **Statutory Scheme**

Under New York law, for an independent presidential candidate and their electors to secure

nomination and access to the November General Election ballot, they must file an independent

nominating petition with the NYSBOE. N.Y. Elec. Law §§ 6-138, 6-140, 6-142(1), 6-144. The independent nominating petition must include, among other requisites, the signatures of at least forty-five thousand New York voters and the candidate's "[p]lace of residence." N.Y. Elec. Law §§ 6-140(1), 6-142(1). A candidate's "residence" is where they "maintain[ ] a fixed, permanent and principal home and to which [they], wherever temporarily located, always intend[ ] to return." N.Y. Elec. Law § 1-104(22). A candidate's "residence" is where he "maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y. Elec. Law § 1-104(22). Eligible voters under N.Y. Elec. Law §§ 16-101(1) and 16-102 may bring a proceeding in the Supreme Court of New York to contest an independent presidential candidate nominating petition. N.Y. Elec. Law §§ 16-100(1), 16-101(1), 16-102(1).

## II.    Factual Background

Kennedy resided in New York for the majority of his life. *Cartwright v. Kennedy*, No. CV-24-1294, 2024 WL 3977541, at *2 (N.Y. App. Div. Aug. 29, 2024); ECF No. 47_Ex.1, at 18. However, in November 2012, he sold his Bedford, NY property. ECF No. 47_Ex.1, at 11. Then in 2014, Kennedy married Cheryl Hines, who resides in California, and testified that "one of [them] had to move." *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *2.; ECF No. 47_Ex.1, at 10. That same year, Kennedy moved his younger than-college-age children, an employee of forty years (and their family), pet emu, turtles, and three dogs to California with him. ECF No. 47_Ex.1, at 10. Kennedy left behind 20 falcons and hawks in New York. ECF No. 47_Ex.1, at 10. In 2015, Kennedy testified to living in his sister's residence for six months or less in New York, before it was sold on November 17, 2015. ECF No. 47_Ex.1, at 12. Kennedy continued to use his sister's address to register to vote in the 2016 primary and general elections. ECF No. 47_Ex.1, at 12.

After that, Kennedy stayed at his friend, David Michaelis's home in Bedford, NY,[1] until January 2017. ECF No. 47_Ex.1, at 7. Two or three weeks per month, Kennedy would arrive on Sunday nights to work at Pace University and Riverkeeper, both located in New York, then travel back to California on Tuesday. ECF No. 47_Ex.1, at 7, 12.  In 2017, Kennedy resigned from his positions at Pace University and Riverkeeper. ECF No. 47_Ex.1, at 12. In a resignation letter dated March 10, 2017, to Riverkeeper Kennedy stated, "[a]s you know, I now live on the west coast and the weekly commute has been hard on my family to say nothing of my carbon footprint." ECF No. 47_Ex.1, at 12.

In 2021, Kennedy purchased a home with his wife in California. ECF No. 47_Ex.1, at 11. Kennedy and Hines owned real property in California and Massachusetts but not in New York. ECF No. 47_Ex.1, at 11. On Kennedy's Federal Election Commission paperwork, he listed his address as 2975 Mandeville Canyon Road. ECF No. 47_Ex.1, at 10. Kennedy also works as counsel for Howard & Street in California. ECF No. 47_Ex.1, at 11.

On April 19, 2023, Kennedy declared his intention to run for President of the United States with America Values 2024, "a political action committee," spending "millions of dollars supporting and advocating [his] candidacy." *Cartwright v. Kennedy*, No. CV-24-1294, 2024 WL 3977541, at *3; ECF No. 34, at 4. In November 2023, Kennedy's lawyer, Paul Rossi, advised him that his "current domicile" "under New York Law and under every other law" is at a specific address in Katonah, New York. ECF No. 47_Ex.1, at 21.

---

[1] Plaintiffs claim that listing a candidate's residence is an unnecessary burden, dangerous in light of safety concerns for political candidates. The Court takes seriously safety concerns of all litigants. Plaintiffs never sought to redact Kennedy's address on the nominating petition, and Plaintiffs cite to specific addresses throughout their filings in this case, without seeking redaction/sealing.  Balancing the public's First Amendment right of access with the privacy interests of Kennedy, and others mentioned in this case, the Court will not mention specific addresses in this opinion. If Plaintiffs seeks to re-file redacted versions of the pleadings in this case, they should notify the Court.

On May 28, 2024, Team Kennedy, Kennedy's campaign organization, submitted an independent nomination petition for Kennedy to the NYSBOE. ECF No. 34, at 2-3. The petition listed Kennedy's place of residence as the address in Katonah, New York, and contained 146,467 signatures. ECF No. 51, at 7; ECF No. 47-Ex.1, at 13. Rose, a New York resident, was one of those signatories. ECF No. 34, at 4. The petition also included Nicole Shanahan, a California resident, as the candidate for vice president. *Cartwright*, No, CV-24-1294, 2024 WL 3977541, at *1; ECF No. 34, at 11.

Kennedy claimed, from 2023, to have let a room in the Katonah property, owned by his childhood friend's wife, Barbara Moss. ECF No. 34, at 4; ECF No. 47_Ex.1, at 16-17. However, no lease agreement was executed, and Moss received her first payment from Kennedy after a New York Post article was published about Kennedy on May 20, 2024. ECF No. 47_Ex.1, at 14, 17. Moss testified that Kennedy spent just one night at her residence, and that was in June 2024. ECF No. 47_Ex.1, at 16. Kennedy also testified that he did not have a lot of "physical attachment" or "a physical presence" at the Katonah property. ECF No. 47_Ex.1, at 6-7. However, Kennedy testified he intended to return and paid income taxes in New York. ECF No. 54, at 7; ECF No. 47_Ex.1, at 13-14.

On May 31, 2024, and June 10, 2024, Voter-Objectors filed petitions in two separate state actions to invalidate Kennedy's nominating petition based on deficiencies in the petition's residency and signature requirements. ECF No. 46, at 6. The petition was filed against Kennedy and the Commissioners of the NYSBOE: Henry T. Berger, Peter S. Kosinski, Essma Bagnuola, Anthony J. Cassale, Kristen Zebrowski Stavisky, and Raymond J. Riley III. ECF No. 46, at 6. On July 16, 2024, the Commissioners of the NYSBOE found Kennedy's petition had sufficient signatures and was valid "subject to judicial action in any court proceedings." ECF No. 46 at 6.

In August 2024, Kennedy suspended his presidential campaign and endorsed another candidate. ECF No. 46 at 2, 15.

### III.   Procedural History

#### A.  Proceedings in Federal Court

On May 21, 2024, Team Kennedy commenced this action challenging New York Election Law provisions governing the time and manner for the requisite collection of signatures for an independent candidate and their electors to secure nomination and access to the November General Election ballot, under the First and Fourteenth Amendments. ECF No. 1. On August 22, 2024, Team Kennedy filed an Amended Complaint, adding two parties (American Values 2024 and Rose) and two new claims under the First and Fourteenth Amendments. FAC; ECF No. 46, at 9. Plaintiffs claimed that N.Y. Elec. Law §§ 1-104(22), 6-140(1), which required the disclosure of an independent presidential candidate's place of residence on a nominating petition, was unconstitutional. *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3; FAC; ECF No. 46, at 9-10; ECF No. 34, at 9-12. On August 22, 2024, Plaintiffs also filed an emergency motion for an order to show cause for a temporary restraining order and a preliminary injunction seeking to restrain and enjoin the State Court's August 13, 2024, ruling and NYSBOE from removing Kennedy's name from the ballot, as an independent party candidate for the office of the President of the United States. ECF Nos. 33, 34.

On September 4, 2024, the Court conducted a hearing on Plaintiffs' application for a preliminary injunction. Representatives for Team Kennedy, American Values 2024, Rose, Berger, Kosinski, Bagnuola, Cassale, Stavisky, Rilley, James, Cartwright, Nelson, and Rhone appeared. Plaintiffs filed a Motion for Leave to file a Second Amended Complaint on September 9, 2024. ECF Nos. 70-71.

### B. Proceedings in State Court

On May 31, 2024, two New York voters filed a petition under N.Y. Elec. Law § 16-102, against Kennedy and the Commissioners of the NYSBOE in New York Supreme Court, Nassau County, seeking to invalidate Kennedy's nominating petition. *Smith v. Kennedy*, 83 Misc. 3d 1239(A), 212 N.Y.S.3d 921, at *1 (N.Y. Sup. Ct. 2024). The Petitioner-Objectors claimed Kennedy's nominating petition was "invalid and lacks the requisite number of signatures sufficient to be placed on the ballot." *Id.*; *see* N.Y. Elec. Law §§ 6-138, 6-140, 6-142(1).

On June 10, 2024, four New York voters filed a petition under N.Y. Elec. Law § 16-102, against Kennedy and the Commissioners of the NYSBOE in New York Supreme Court, Dutchess County, seeking to invalidate Kennedy's nominating petition. *Cartwright v. Kennedy*, No. 906349-24, 2024 WL 3880344, at *2 (N.Y. Sup. Ct. July 23, 2024). The Petitioner-Objectors claimed Kennedy's nomination petition should be invalidated, "on a myriad of grounds, including allegations that a number of subscribing witness statements and individual signatures suffer from fatal defects, that fraudulent methods were used during the signature collection process, and that respondent Kennedy falsely represented on the nominating petition that he is a resident of New York State when in truth he is a resident of California." *Id.* On August 13, 2024, the State Court granted the petition in its entirety and ordered the invalidation of the nomination petition filed to designate Kennedy as the presidential candidate, Shanahan as the vice-presidential candidate, and the electors for We The People. *Cartwright v. Kennedy*, No. 906349-24, 2024 WL 3894605, at *15-16 (N.Y. Sup. Ct. Aug. 13, 2024), *aff'd*, No. CV-24-1294, 2024 WL 3977541. The court found that Kennedy's address listed on the nomination petition was not his "bona fide and legitimate residence, but merely a 'sham' address" therefore violating New York Election Law. *Id.*; *see* N.Y. Elec. Law §§ 1-104(22), 6-138, 6-140.

Kennedy appealed the decision to the Appellate Division, Third Department, claiming the New York Election law violated the First, Twelfth, and Fourteenth Amendments. *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3. On August 29, 2024, the Third Department affirmed the state trial court's August 13, 2024 judgment. *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3-4. On September 10, 2024, the Court of Appeals of New York dismissed Plaintiffs' pending appeal of the Third Department's decision. 2024 N.Y. Slip Op. 73915, *In the Matter of Caroline Cartwright, et al., Respondents, v. Robert F. Kennedy Jr., et al., Appellants, et al., Respondents.*, No. 2024-632, 2024 WL 4127460, at *1 (N.Y. Sept. 10, 2024)

## **STANDARD OF REVIEW**

"[T]o obtain a preliminary injunction against governmental action taken pursuant to a statute, the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction. The movant also must show that the balance of equities tips in his or her favor." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (internal quotation marks, footnote, and alteration omitted). A district court may enter a *prohibitory* preliminary injunction staying "government action taken in the public interest pursuant to a statutory or regulatory scheme" only when the moving party has demonstrated that (1) absent injunctive relief, he will suffer "irreparable injury," and (2) there is "a likelihood that he will succeed on the merits of his claim." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006) (internal citations omitted).

The Second Circuit has held that in the temporary restraining order or preliminary injunction context, the status quo is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (quotation

marks and internal citations omitted). The Second Circuit has also explained that the status quo "is really a 'status quo ante,'" which is intended to preclude "[parties] from seeking shelter under a current 'status quo' precipitated by their wrong-doing." *North American Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d at 32, 37 n.5 (2d Cir. 2018)

The Parties dispute whether Plaintiffs seek a prohibitory or mandatory injunction. Plaintiffs assert that the last peaceable uncontested status was when the Board of Elections voted and decided that Kennedy's petitions were valid. Preliminary Injunction Hearing Transcript ("Hearing Tr.") at 6:18-7:4. At that point he was on the ballot. *Id.* The controversy is that the State Court ruling knocked him off the ballot, and therefore this a prohibitory injunction not a mandatory one. *Id.* Defendants argue that Plaintiffs seek a mandatory injunction because the Board of Elections had never determined Kennedy was going on the ballot, and always recognized that this residence question was for the State Court to decide. *Id.* at 12:10-13:11.

Here, the last actual, peaceable, uncontested status between the Parties was on July 29, 2024 when Defendant Board Commissioners determined that Kennedy's petition was valid "subject to judicial action in any court proceeding." Def. Opp., ECF No. 46 at 6. As such, Plaintiffs seek a prohibitory injunction to enjoin enforcement of the State Court's decision to invalidate Kennedy's nominating petition.[2]

Plaintiffs are not subject to the heightened standard for mandatory injunctions, and therefore only need to show a "greater than fifty percent probability of success." *Citigroup Glob. Markets, Inc.*, 598 F.3d at 34-35 (2d Cir. 2010).

---

[2] Given the Court's finding that Plaintiffs are unlikely to succeed on the merits of their requested prohibitory injunction, Plaintiffs fail to meet the heightened standard of "clear and substantial" likelihood of success for mandatory injunctions.

## DISCUSSION

Before turning to the merits, the Court will address Defendants' non-merit-based objections to the preliminary injunction in turn: abstention, mootness, collateral estoppel, and res judicata.

### I.    This Court's Exercise of Subject Matter Jurisdiction is Proper

Because the existence of subject matter jurisdiction is a threshold question, the Court must resolve jurisdictional issues before delving into the merits of a dispute. *See McCrory v. Adm'r of the Fed. Emergency Mgmt. Agency of the United States Dep't of Homeland Sec.*, 22 F. Supp. 3d 279, 286-87 (S.D.N.Y. 2014). The First Amended Complaint indicates that this Court has jurisdiction under the U.S. Constitution, 28 U.S.C. § 1331, and 42 U.S.C. § 1983. *See* FAC ¶ 25. This Court has subject matter jurisdiction and will not abstain from exercising that jurisdiction.[3]

In deciding whether to abstain under *Colorado River*, a district court must first determine whether the federal and state court cases are parallel. Federal and state proceedings are parallel for purposes of abstention when the two proceedings are "essentially the same" -- when there is an identity of parties, and the issues and relief sought are the same. Id. If the actions are deemed parallel, courts are then to consider six factors to determine whether abstention is appropriate. These factors are: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking

---

[3] In their Opposition Brief, Defendants argued that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. During Oral Argument, Defendants conceded that this doctrine does not apply and does not deprive this Court of subject matter jurisdiction. Hearing Tr. at 13: 20-25. This Court dismisses Defendants' *Rooker-Feldman* argument because the state-court case had not ended by the time Plaintiffs filed this action. *See Hunter v. McMahon*, 75 F.4th 62, 70 (2d Cir. 2023) ("If a . . . state-court appeal remains pending . . . the state-court proceedings have not ended and *Rooker-Feldman* does not apply.").

to invoke federal jurisdiction. *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 473 (S.D.N.Y. 2020) (internal citations and quotations omitted).

In this case, although the issues are the same, the parties are not identical to those of the State Court proceedings. *Compare Cartwright v. Kennedy*, No. 906349-24, 2024 N.Y. Misc. LEXIS 3768 (N.Y. Sup. Ct. Albany Cnty. Aug. 13, 2024) *with* FAC ¶¶ 12-24. Even if the parties were identical, in applying the six-factor test, *Colorado River* would not apply. *See U.S. Bank Nat'l Assoc. v. E. Fordham De LLC*, 385 F. Supp. 3d 256, 258 (S.D.N.Y. 2019), aff'd 804 F. App'x 106 (2d Cir. 2020) ("*Colorado River* abstention is reserved for exceptional circumstances.").

Because the first two factors are irrelevant and do not apply to this case, they are neutral. Neutrality weighs against abstention. *Gentes v. Osten*, No. 21-2022-CV, 2022 WL 16984686, at *3. (2d Cir. Nov. 17, 2022).

Regarding the third factor, "[t]here is no threat of piecemeal litigation" if "[t]he resolution of the federal constitutional questions will settle the federal issues, regardless of the outcome of the state litigation"). *Alliance of Am. Insurers*, 854 F.2d at 603 (full cite).

The fourth factor disfavors abstention because this proceeding, *Team Kennedy et al. v. Berger et al.*, (1:24-cv-03897-ALC) (filed May 20, 2024) predated the state case. *Cartwright et al. v. Kennedy et al.,* 906349-24 (filed June 10, 2024). *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d. Cir. 1989) ("The fourth factor looks at the chronological order in which the actions were filed.").

Under the fifth factor, since federal law supplies the rule of decision, abstention is disfavored. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("the presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction].").

The sixth factor favors abstention. We consider whether the procedures of New York's state courts "are adequate to protect [Kennedy's] federal rights." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 103 (2d Cir. 2012) (internal citation omitted). Specifically, we are to determine whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* We do not doubt that the New York courts provide a fair alternative forum that is capable of resolving the constitutional issues Kennedy alleges.

Balancing the factors militates against abstention. Moreover, federal courts have an obligation to exercise jurisdiction in all but the most exceptional circumstances. "[W]here a federal court has subject matter jurisdiction, it has a 'virtually unflagging obligation to exercise that jurisdiction,' even if an action concerning the same matter is pending in state court." *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022) (internal citation omitted)). In recognition of that principle, this Circuit has insisted on a "heavy presumption" against "[a]bstention from the exercise of federal jurisdiction." *LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 173 (2d Cir. 2023) (internal citations omitted). "In abstention cases, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved," such that "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Niagara Mohawk Power*, 673 F.3d at 99 (citation omitted)

The Court will not abstain, and therefore this Court's exercise of subject matter jurisdiction is proper.

## II.    This Case is Not Moot

Defendants claim that since Kennedy suspended his campaign and has stated he has no path to victory the case is moot. This argument is unavailing. A suspended campaign is different from a terminated campaign, and in any event, there is no requirement that a candidate must be likely to win, have a real possibility of winning, or even want to win a presidential election in order to be on the ballot for a particular state.[4] As Team Kennedy has stated, there are important goals for Kennedy and his party in future elections in New York if Kennedy garners five percent of the national vote. Under New York law, his party will qualify as a party automatically eligible for placement on the ballot at a future election if he receives a significant percentage of the New York vote. *See* Election Law §§ 1-104(3), 6-128.

### III.     Res Judicata and Collateral Estoppel Do Not Bar This Action

#### A.  Claim Preclusion (Res Judicata)[5]

For a party to succeed on the affirmative defense of res judicata–also known as claim preclusion– it "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action." *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition*, LP, No. 21-CV-826(KAM)(JRC), 2023 W; 8283148, at *13 (E.D.N.Y. Nov. 30, 2023).

The parties do not dispute the third element.  At a minimum the federal constitutionality of New York's residence requirement could have been raised in the prior action.

---

[4] Whether suspending a campaign or only appearing on ballots for some states is a prudent political strategy is irrelevant to the legal issues in this case. The prudence of such a strategy will be debated by an array of political pundits, a flock of history and political science professors, and a chattering of voices on social media.

[5] To determine if res judicata applies to a New York state court judgment, federal courts apply New York res judicata law. *See New York v. Mountain Tobacco Co*., 942 F.3d 536, 543 (2d Cir. 2019).

### 1. Adjudication on the Merits

The issue of federal constitutionality of the residence requirement was decided on the merits. As discussed in the section on issue preclusion, the State courts decided the issue. *Cartwright*, No. 906349-24, 2024 WL 3894605, at *15; *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3. A ruling by the Appellate division counts as a decision on the merits. *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3-4.

### 2. Privity

"[P]laintiffs in a federal suit that follows a state suit are in privity with the state plaintiffs where 'their interests are the same and [the federal plaintiffs] are controlled by the same party or parties' as the state plaintiffs." *Hoblock v. Albany Cnty. Nd. of Elections*, 422 F.3d 77, 95 (2d Cir. 2005) (brackets in original) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 128 (2d Cir. 1997)).

For privity, the federal plaintiffs must have the same interests and be controlled by the same party or parties as the state plaintiffs. *Id*.

### i. Same Interests

Plaintiffs do not dispute that Kennedy has identical interests with his campaign. But there are three plaintiffs here: Team Kennedy, American Values 2024, and Jeffrey Rose.[6] While Team Kennedy shares identical interests with the state Defendant, Robert Kennedy Jr., the other federal plaintiffs may not share all of the same interests with the state plaintiffs.

---

[6] The Court takes notice that Plaintiffs have sought leave to file a second amended complaint to include class action allegations pursuant to Fed. R. C. O. 23(b)(2) on behalf of classes of voters who are similarly situated to Mr. Rose, including: (1) all New York voters who in 2024 signed a petition seeking to place any independent or non-recognized-party presidential candidate on the ballot; (2) all New York voters who are not registered in political parties whose nominees for President will be on the ballot in 2024; and/or (3) all New York voters "whose political preferences lie outside the existing political parties." Pl. Memo. Mot. Leave to Amend, ECF No. 71 at 2.

14

American Values 2024 has a different motivation for having Kennedy on the ballot—this Political Action Committee wants independent candidates on state ballots. This is not limited to Kennedy; American Values 2024 supports even opponents of Kennedy on the ballot. Mr. Rose wants Kennedy on the ballot in order to vote for Kennedy in this election; he may not be necessarily concerned about Kennedy's party being placed on future ballots, or Kennedy's eligibility for certain federal benefits. Because Mr. Rose represents a class of putative voters, all members of this class do not have identical motivations for having Kennedy placed on the ballot. In addition, voters' interests carry greater weight than the interests of Kennedy–the voter has a constitutional right to vote for a candidate of their choice, but a candidate has no constitutional right to be on a ballot.

However, motivations need not be identical for there to be an identity of interest. All of these plaintiffs share one identical interest: having Kennedy placed on the ballot. The Court finds that this shared desired outcome is sufficient to satisfy the same interest requirement.

### ii. Control

Defendants are correct that "there can be no dispute that Kennedy and his principal campaign are one in the same, because Kennedy is certainly in control of his own campaign." Def. Opp., ECF No. 46 at 14. Plaintiffs do not meaningfully challenge this argument. But American Values 2024 is not controlled by Team Kennedy nor Robert Kennedy Jr. Both American Values 2024 and Mr. Rose have a different attorney than the attorneys representing Team Kennedy. Perhaps more importantly, Mr. Rose represents a class of putative

voters. Kennedy certainly does not control them.[7]  Accordingly American Values 2024 and the class of putative voters, represented by Mr. Rose, are not in privity with Kennedy.

Because Defendants bear the burden to establish res judicata, and they have failed to establish that Kennedy controls American Values 2024 and Mr. Rose (on behalf of himself and the putative class), the defense does not apply to them.[8] *See, e.g.*, *Hoblock*, 422 F.3d at 91 ("It remains possible, however, that the plaintiff voters and candidates are in privity if the candidates in fact are controlling the voters' federal suit, not to advance the interests of all voters who submitted challenged absentee ballots, but rather to further the interests of the candidates and a subset of voters whose interests *do* coincide exactly with those of the candidates. If the plaintiff voters are in reality the candidates' pawns, then by definition the plaintiff voters' interests are identical to the candidates' (and different from the interests of all similarly situated voters) and were adequately represented in the candidates' state-court lawsuit.

### B.  Collateral Estoppel (Issue Preclusion)

Under New York law,[9] issue preclusion will apply only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Hoblock*, 422 F.3d at 94 (2d Cir. 2005) (internal citation omitted). Under New York law, the doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from

---

[7] In the First Amended Complaint, Jeffrey Rose is listed as a plaintiff in his individual capacity. Rose's counsel has indicated that he wishes to amend the complaint, stating that Rose represents a putative class of independent voters. For purposes of this opinion, the Court will assume that the Second Amended Complaint will be accepted.

[8] Because Team Kennedy is in privity with Kennedy, and the other requirements of res judicata have been met, it is unlikely that Team Kennedy would succeed on the merits.

[9] Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York issue preclusion (collateral estoppel) law to New York state-court judgments. *Hoblock*, 422 F.3d at 93.

relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or

proceeding and decided against that party or those in privity, whether or not the tribunals or

causes of action are the same. *Ripley v. Storer*, 309 N.Y. 506, 517 (1956); see also Restatement

(Second) of Judgments § 2 (1982); 46 Am. Jur. 2d Judgments § 415; 9 Carmody-Wait 2d, NY

Prac, Judgments, § 63:205.

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the

identity of the issues in the present litigation and the prior determination, whereas the party

attempting to defeat its application has the burden of establishing the absence of a full and fair

opportunity to litigate the issue in the prior action." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449,

456 (1985) (internal citation omitted).

### 1.  Whether the Issue Was Actually Decided

The Supreme Court in Albany decided that the residence requirement complied with the U.S.

Constitution. *Cartwright v. Kennedy*, No. 906349-24, 2024 WL 3894605, at *15-16 (N.Y. Sup.

Ct. Aug. 13, 2024), *aff'd*, No. CV-24-1294, 2024 WL 3977541. The Third Department also

found that Kennedy's federal constitutional challenges were without merit. *Cartwright*, No. CV-

24-1294, 2024 WL 3977541, at *3-4.

Plaintiffs in the State Court matter did not bring claims under the federal Constitution. The

claims dealt solely with the application of New York Election law as it applied to Kennedy under

New York law.  Kennedy raised the federal constitutional issue in his answer, requesting the

State Supreme Court to address it. He raised the issue in the Third Department. He appealed the

Third Department's decision to the Court of Appeals. *See Cartwright*, No. 906349-24, 2024 WL

3894605, at *15; *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3; *Cartwright*, No. 2024-

632, 2024 N.Y. Slip Op. 73915. Both State courts came to a determination on the constitutional issues. Kennedy got answers. He didn't like them. He cannot now claim that the issue was not actually decided by the State courts and that it is not precluded in this action.[10] He made it necessary for those decisions to be rendered, through the same lawyer representing Team Kennedy here and in the Appellate Division.

### 2. Whether the Issue Was Necessarily Decided[11]

Since collateral estoppel requires that an issue be necessarily decided in the prior proceeding, "a finding which is but an alternative ground for the prior court's decision" will not ordinarily be given preclusive effect. *Malloy v. Trombley*, 50 N.Y.2d 46, 49 (1980); *see Pollicino v. Roemer & Featherstonhaugh P.C.*, 716 N.Y.S.2d 416 (3d Dep't 2000). Moreover, language that is not necessary to resolve an issue, constitutes dicta and should not be accorded preclusive effect. *See Stokes v. Stokes*, 172 N.Y. 327, 341 (1902).

The State Court's ruling on the constitutional issue was neither dicta nor an alternative ground for arriving at the ultimate decision or outcome of the case. This was not simply part of the court's thought process or comments regarding the policy considerations further justifying the ruling. To the extent Plaintiffs claim that it was not necessary for the state courts to rule at all

---

[10] Arguing that the constitutional issue was not actually decided below, Plaintiffs cite to an out of context statement Judge Ryba made during trial when discussing the proper scope of witness testimony when Kennedy attempted to establish his claim of unconstitutionality though his attorney Rossi's testimony although he was not disclosed or shown to be qualified as an expert in either Constitutional or New York State Law. *Cartwright v. Kennedy*, 2024 N.Y. Misc. LEXIS 3768, *51 (N.Y. Sup. Ct. Albany County Aug. 13, 2024). She noted, "We're not going to start a constitutional trial on the last day of testimony." (ECF No. 56-1, 205:5-10). Her statement does not detract from the State Supreme Court's findings on the constitutional issues.

[11] Given the paucity of case law on this issue, this analysis is a context-specific inquiry closely wedded to the facts at hand. For the purposes of analyzing this specific case, this Court distinguishes between rulings and outcomes.

on the second issue—whether the residence requirement complies with the federal constitution–this argument fails.[12] *Cartwright*, No. 906349-24, 2024 WL 3894605, at *14-15.

As relevant here, the State Court ruled on two issues: (1) Kennedy's listed residence did not comply with New York's residence requirement under New York Election law; (2) New York's residence requirement complies with the federal constitution. Plaintiffs do not challenge, in this litigation, the State Court's first ruling, nor do they claim that the first ruling was unnecessary.[13] *See Cartwright*, No. 906349-24, 2024 WL 3894605, at *14-15; *Cartwright*, No. CV-24-1294, 2024 WL 3977541, at *3

The State Court decided that the residence requirement did not violate the constitution. That ruling, standing alone, would not keep Kennedy off the ballot. The ruling regarding constitutionality was tethered to the State Court's decision regarding compliance with the residence requirement, not an alternative basis that would result in excluding Kennedy from the ballot. *See Stegemann v. Rensselaer Cty. Sheriff's Office*, 2021 U.S. App. LEXIS 34783, *11-12 (2d Cir. 2021) (holding that an issue was necessary to the resolution of a motion because it was

---

[12] Plaintiffs do not explicitly raise the argument that the constitutional issues were not necessarily decided at the State Court, but that Judge Ryba erred by not addressing the constitutional issues, which the Court understands to be an argument that the constitutional issues were not actually decided. They assert that the state trial court "expressly blocked the constitutional rights that Plaintiffs seek to vindicate here from being litigated in the state court." Pl. Reply at 4.

[13] Even though a judge's rulings on discrete legal issues contribute to the ultimate outcome of a case, the concepts of ruling on discrete legal issues and the ultimate outcome are distinct. There were two possible outcomes: Kennedy is placed on the ballot or Kennedy is not on the ballot. There are two possible rulings regarding the discrete legal issue concerning constitutionality of the residence requirement: it violates the Constitution or it does not. If the state courts had chosen the other possible alternative regarding constitutionality–stating that the residence requirement violated the Constitution– the outcome would be different. Kennedy would appear on the ballot. Due to the Supremacy Clause, the state courts could not state that although the residence requirement violates the constitution, Kennedy should not be placed on the ballot because his residence isn't valid under New York law. Therefore, it was necessary for the Court to decide the issue since the ruling on that discrete issue could change the ultimate outcome of the case. The state courts could not simply ignore the constitutional issue raised by Kennedy.

at the heart of the alleged constitutional injury) (citing to *Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 458-59, 462 N.Y.S.2d 896 (N.Y. App. Div. 2d Dep't 1983)).

### 3.  Whether Plaintiffs Had a Full and Fair Opportunity to Litigate

Kennedy had a full and fair opportunity to adjudicate the claim. The trial court stated that this was not a constitutional trial, meaning there was no need for witness testimony on the constitutional issue. Plaintiffs claim that "little record was allowed to be made on the constitutional issues, and the Appellate Division addressed the constitutional issues only in a single conclusory paragraph devoid of reasoning, facts, or analysis." Pl. Reply at 7-8, ECF No. 54.

Plaintiffs claim that this deprived them of a full and fair opportunity to litigate the issue.  Plaintiffs are wrong. Plaintiffs rely on *West v. Ruff*, 961 F.2d 1064, 1065-66 (2d Cir. 1992) for this proposition. In *West*, the Court found the lack of a fair opportunity to litigate "because (1) the appointment of counsel in the federal matter pursuant to Hodge reflected a finding that West's claim had colorable substance and could not be adequately presented pro se; (2) West had at best a single day's notice of his state trial; (3) his appointed counsel in a factually identical  federal case was never notified of the parallel state litigation; (4) the Court of Claims judge had no notice of the potential availability of appointed counsel; and (5) West has shown prejudice in the availability of an eyewitness in circumstances in which he seems to have had neither discovery nor sufficient notice to obtain the presence of the witness." *Id*.

In this case Kennedy and Team Kennedy were not pro se and were represented by the same attorney in the state and federal proceedings.  Plaintiffs point to no case law indicating that testimony from witnesses must be held before a court can determine constitutional

issues. Although in a passing statement, made in the midst of an expedited bench trial, the Supreme Court judge indicated that the federal constitutional issue was not before them, the judge ultimately ruled on the issue.

It matters not that the state judges declined to write a tome, instead choosing to decide the issue with brevity. Plaintiffs have not carried their burden to show that they lacked a full and fair opportunity to litigate the issues.

Because Defendants have failed to establish that the American Values 2024 and the voters, represented by Mr. Jeffrey Rose, were in privity in both the State action and the instant action, collateral estoppel does not apply. Team Kennedy is in privity with Kennedy. Since the other requirements for collateral estoppel have been met, the defense makes it unlikely that Team Kennedy would succeed on the merits.

### IV.    Plaintiffs Have Failed to Prove Likelihood of Success on the Merits

#### A. Standard for Constitutional Challenges to State Election Laws – *Anderson-Burdick* Framework

This Circuit has held that when considering whether a state election law imposes an unconstitutional burden on voting rights, instead of strict scrutiny, courts apply what has come to be known as the *Anderson-Burdick framework* derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Sam Party of N.Y. v. Kosinski*, 987 F.3d 267, 271 (2d Cir. 2021). Under this standard, the rigorousness of the court's inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. *Id.* (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)) (internal quotation marks removed). First, if the restrictions on those rights are severe, then strict scrutiny applies. *Id.* But when a state election law provision imposes only

21

reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions. *Id.* This latter, lesser scrutiny is not pure rational basis review. *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 108 (2d Cir. 2008). Rather, "the court must actually 'weigh' the burdens imposed on the plaintiff against 'the precise interests put forward by the State,' and the court must take 'into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 108-09 (quoting *Burdick*, 504 U.S. at 434). Review under this balancing test is "quite deferential," and no "elaborate, empirical verification" is required. *Id.* at 109 (quoting *Timmons*, 520 U.S. at 364).

1. **Whether Strict Scrutiny Applies**

Plaintiffs argue that the residence requirement is both severe and discriminatory as applied,[14] and thus subject to strict scrutiny because this case is closely analogous to *Anderson*. Moreover, Plaintiffs allege that the constitutional interests in this case are identical to that of *Anderson* and the state interests here are weaker. As described in depth below, this assertion is misguided. This Circuit has made clear that certain election law requirements that function as presumptively higher hurdles to the ballot for independent parties pass constitutional muster.

In *Sam Party of N.Y. v. Kosinski*, the Second Circuit affirmed a Southern District of New York Court's denial of preliminary relief where the plaintiff political organization was unlikely to succeed on the merits of its First and Fourteenth Amendment claims. *Sam Party of N.Y.*, 987 F.3d at 274. When applying the *Anderson-Burdick* framework, the Court found that New York's presidential-election party-qualification requirement did not impose a severe burden on minor

---

[14] Plaintiffs have confirmed that they assert an as-applied challenge to the residence requirement. They do not argue that the statute is constitutionally impermissible on its face such that no application of the statute would be constitutional but and as-applied to Kennedy operates unconstitutionally as to him because of his particular circumstances. *See* Hearing Tr. 71: 13-19.

parties, even though the amendment significantly changed the method New York had employed for 85 years to confer party status on a political organization. *Id.* at 275. The amendment raised the threshold from 50,000 votes to the greater of 130,000 votes or two percent of the total vote, and instead of requalifying every four years, political organizations now had to requalify by meeting the higher threshold in the gubernatorial *and* presidential elections. *Id.* at 272. Ultimately, the Circuit held that the State set forth a coherent account of why the requirement would help guard against disorder and waste. *Id.* at 278.

In *Sam Party*, the constitutional interests at issue were identical to the ones asserted in this case, the state's interests were similarly situated, and the requirement at issue was far weightier than requiring candidates to accurately disclose his or her place of residence. Because the burden against constitutional rights is minimal and nondiscriminatory, strict scrutiny does not apply.

    a. **Severity of Burden**

Plaintiffs claim that the residence requirement is a severe burden that falls unequally on independent candidates. Courts have identified three types of severe burdens on the right of individuals to associate as a political party: (1) regulations meddling in a political party's internal affairs; (2) regulations restricting the core associational activities of the party or its members; and (3) regulations that make it virtually impossible for minor parties to qualify for the ballot. *Sam Party of N.Y.*, 987 F.3d at 275 (collecting cases). When considering the impact of the ballot access process, the "hallmark of a severe burden is exclusion or virtual exclusion from the ballot**.**" *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020). To gauge whether minor parties have been so burdened, we look at the "combined effect of [New York's] ballot-access restrictions." *Libertarian Party of Ky.*, 835 F.3d at 575 (internal quotation marks omitted).

It is certainly true that at present Kennedy is completely excluded from the ballot. But this is not dispositive. In *Libertarian Party v. Lamont*, the Second Circuit held that Connecticut's petitioning laws which prevented Libertarian Party candidates from appearing on the ballot did not impose a severe burden on their First and Fourteenth Amendment rights. *Libertarian Party of Conn.*, 977 F.3d at 177. The Court found that a reasonably diligent candidate could be expected to satisfy the signature requirements and gain a place on the ballot. *Id.* at 179. Here, a reasonably diligent candidate can meet the residence requirement under New York law and gain a place on the ballot.[15] As set forth by the State Court, the applicable standard of residency under New York law provides:

> According to Election Law § l-104 (22) and New York State case law, a residence is that place where a person maintains a fixed, permanent, and principal home and to which he or she, wherever temporarily located, always intends to return. As used in the Election Law, the term 'residence' is synonymous with 'domicile'. Case law has also established that an individual having two residences may choose one to which she or he has legitimate, significant and continuing attachments as her or his residence for purposes of the Election Law. The crucial factor in determining whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent to reside there, coupled with physical presence, without any aura of sham.
>
> *Cartwright v. Kennedy*, 2024 N.Y. Misc. LEXIS 3768, *5 (N.Y. Sup. Ct. Albany County Aug. 13, 2024)

Residency is generally a factual question, dependent on the particular circumstances presented. *Matter of Glickman v Laffin*, 27 NY3d 810, 815, 37 N.Y.S.3d 792, 59 N.E.3d 527 (2016) [citation omitted]). Notwithstanding Plaintiffs' assertion that candidates like Kennedy, who have more than one home are forced by the residence requirement to guess at and gamble on which of his residences a New York court will later determine to satisfy the state's

---

[15] The Court need not determine whether the disclosure of an address on a nominating petition, standing alone, is a severe burden. However, the Court does recognize the legitimate safety concerns that candidates express when required to publicly list the addresses of their residence.

domiciliary "permanent home" definition, New York case law is clear. The "Election Law does not preclude a person from having two residences and choosing one for election purposes provided he or she has legitimate, significant and continuing attachments to that residence" *Matter of Cartwright v. Kennedy*, 2024 N.Y. App. Div. LEXIS 4529, *5 (3d Dep't Aug. 29, 2024) (internal citations omitted).

Plaintiffs' argument that the "strict compliance" standard contradicts *Anderson* is similarly unavailing. Election Law § 6-140 (1) requires that each page of an independent nominating petition set forth the address of the candidate's "place of residence" (Election Law § 6-140 [1]). The Court of Appeals has repeatedly emphasized that although substantial compliance with Election Law requirements is acceptable as to details of form, "there must be strict compliance with statutory commands as to matters of prescribed content." *Matter of Hutson v. Bass*, 54 NY2d 772, 774, 426 N.E.2d 749, 443 N.Y.S.2d 57 (1981); *see Matter of Stoppenbach v. Sweeney*, 98 NY2d 431, 433, 778 N.E.2d 1040, 749 N.Y.S.2d 210 (2002). The requirement that each page of a nominating petition set forth the candidate's "place of residence" is a matter of prescribed content, rather than form, and therefore strict compliance with the requirement is necessary (*see Matter of Stoppenbach v Sweeney*, 98 NY2d at 433 (2002); *Matter of Hutson v Bass*, 54 NY2d at 774 (1981); *Matter of Sheehan v Scaringe*, 154 AD2d 832, 546 N.Y.S.2d 698 (1989), *appeal denied* 74 N.Y.2d 615, 549 N.E.2d 151, 549 N.Y.S.2d 960 (1989)).

Unlike the filing deadline at issue in *Anderson*, residency is a matter of prescribed content, and as New York courts have expressed, mandating strict compliance with the Election Law in this regard is designed to guarantee the integrity of the election process by facilitating the discovery of fraud and reducing the likelihood of unequal enforcement of the law (*see*, *Seawright v Bd. of Elections in City of New York*, 35 NY3d 227, 233, 127 N.Y.S.3d 45, 150 N.E.3d 848

(2020); *Matter of Gross v Albany County Bd. of Elections*, 3 NY3d 251, 258, 819 N.E.2d 197, 785 N.Y.S.2d 729 (2004)). The strict compliance standard is a safeguard against constitutional violations, and it is neutrally applied regardless of a candidate's history, background, party affiliation, protected class, or any other criterion irrelevant to a determination of whether its requirements have been met. *Matter of Staber v Fidler*, 65 NY2d 529, 534, 482 N.E.2d 1204, 493 N.Y.S.2d 288 (1985).

There is no dispute that Kennedy listed an address on every page of the nominating petition, and that he intended to list the address on each page of the nominating petition. Hearing Tr. at 76:7-24. There is also no evidence to suggest that Kennedy made some sort of error or mistake in listing the address, as was the case in *Matter of Ferris v Sadowski* (45 NY2d 815, 381 N.E.2d 339, 409 N.Y.S.2d 133 (978)) and *Matter of Maloney v Ulster County Bd. of Elections* (21 AD3d 692, 800 N.Y.S.2d 249 (3d Dept 2005), *lv denied* 5 NY3d 706, 801 N.Y.S.2d 800, 835 N.E.2d 660 (2005)). *Ferris* and *Maloney* involved situations in which candidates inadvertently listed previous addresses of genuine bona fide residences within the meaning of the Election Law, unlike Kennedy who intentionally, deliberately, and on the advice of counsel, listed an address at that does not qualify as a residence under New York law. *Matter of Cartwright v. Kennedy*, 2024 N.Y. App. Div. LEXIS 4529, *9. Relevant here is whether a reasonably diligent candidate could be expected to satisfy the residence requirement. *Libertarian Party v. Lamont*, 977 F.3d 173, 179 (2d. Cir. 2020). At issue in the State court proceeding was not whether Kennedy maintained a residence that would satisfy the residence requirements under the Election Law, but whether the address Kennedy listed on the nominating petition was in fact his actual residence. *Matter of Cartwright v. Kennedy*, 2024 N.Y. App. Div. LEXIS 4529, *9.

And in any event, New York state courts have routinely invalidated nominating petitions where candidates did not actually reside at the addresses listed on the designating petition as their residences. *See e.g.*, *Eisenberg v Strasser*, 768 N.Y.S.2d 773, 1 Misc. 3d 299, 2003 N.Y. Misc. LEXIS 1144 (N.Y. Sup. Ct.), *aff'd*, 307 A.D.2d 1053, 763 N.Y.S.2d 782, 2003 N.Y. App. Div. LEXIS 9049 (N.Y. App. Div. 2d Dep't 2003) (finding address candidate listed on designating petition was false and for a business from which he retired); *Lemishow v. Black*, 104 A.D.2d 460, 478 N.Y.S.2d 971, 1984 N.Y. App. Div. LEXIS 19907 (N.Y. App. Div. 2d Dep't), aff'd, 63 N.Y.2d 684, 479 N.Y.S.2d 972, 468 N.E.2d 1109, 1984 N.Y. LEXIS 4538 (N.Y. 1984) (candidate resided in different assembly district and had never slept, eaten, or kept any clothes at the address appearing on the petition but used the address to receive mail for one to two weeks prior to the hearing and changed his place of party enrollment to that address); *Brigandi v. Barasch*, 144 A.D.2d 177, 535 N.Y.S.2d 117, 1988 N.Y. App. Div. LEXIS 15078 (N.Y. App. Div. 3d Dep't 1988) (designating petition for Congressional candidate invalidated where record supported that candidate never actually resided at address listed). Moreover, State Courts have cautioned against the creation and use of sham addresses solely for the purpose of circumventing residence requirements under the Election Law. *People v. O'Hara*, 96 N.Y.2d 378, 385 (2001), citing *Matter of Hosley v Curry,* 207 AD2d 116, 118, *revd on other grounds* 85 NY2d 447*; see also, Matter of Lemishow v Black,* 104 AD2d 460, *affd* 63 NY2d 684, 685).

Listing correct information about a candidate's actual residence is far from a severe burden that would be constitutionally impermissible. That twenty-two States across the country require presidential candidates to publish either a domicile or residential address on ballot access petitions suggests that such disclosures are minimal requirements that assist States in regulating and ordering fair elections. *See* Pl. Memo. at n.10-12.

Because Plaintiffs have failed to demonstrate that the residence requirement imposed a severe burden on their rights, strict scrutiny does not apply under the *Anderson-Burdick* framework.[16]

### b.   Whether the Burden is Discriminatory

Plaintiffs' argument that the residence requirement discriminates against independent candidates as opposed to established party candidates and should thus be subject to strict scrutiny is without merit.[17] Independent candidates and established party nominees must both disclose the same identifying information, including their name and residence. *Compare* N.Y. Elec. Law § 6-140(1)(a) *with* N.Y. Elec. Law § 6–156 ("Party nominations; certification"). Because the requirement is neutral and applies to all candidates regardless of their party size or affiliation, the burden is nondiscriminatory and not subject to strict scrutiny.

### c.   Weighing the State's Interests

The balancing test at the second stage of the *Anderson-Burdick* framework is "quite deferential." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008). "[A] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997) (cleaned up). Otherwise, we would "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Sam Party of N.Y.*, 987 F.3d at 276 (citing *Clingman*, 544 U.S. at 593).

---

[16] Assuming, *arguendo*, that strict scrutiny applies, the residence requirement is narrowly tailored to further the compelling governmental interests elucidated below.

[17] Plaintiffs have conceded that, contrary to statements made in the FAC and Plaintiffs' opening brief, Section 6-156 does require President nominees of national political parties—and not merely the nominees of their New York state affiliates who are recognized "parties" pursuant to New York Election Law—to file Certificates of Nomination that include their "residence" address. *See* Plaintiff's Letter dated Sept. 9, 2024 (ECF No. 69).

The purpose of inclusion of the residence address of the candidate (Election Law, § 6-132, subd 1) is not only to facilitate the processing of his petition by the Board of Elections and to ease the task of one checking his qualification to run, but perhaps most important to assure that the signers of his petition are aware of the identity of their candidate. *Ferris v. Sadowski*, 45 N.Y.2d 815, 817, 381 NE2d 339, 409 NYS2d 133 [1978]).   Ultimately, a "too-liberal construction of the Election Law has the potential for inviting mischief on the part of candidates, or their supporters or aides, or worse still, manipulations of the entire election process." Cartwright v. Kennedy, No. 906349-24, 2024 N.Y. Misc. LEXIS 3768 (N.Y. Sup. Ct. Albany Cnty. Aug. 13, 2024)  (cleaned up). Moreover, "[t]he United States Constitution cannot be construed to protect candidates from making false statements on their petitions for public office." *Id.* at 33.

In the instant case, this Court need not determine whether Kennedy intended to mislead or confuse anyone when he listed the New York address as his residence though he had never resided there within the meaning of the Election Law. But the State's legitimate concern in requiring candidates to accurately disclose their residency to avoid voter confusion is neither fanciful nor flimsy. Voters might be entirely misled and manipulated into voting for a presidential candidate because he claimed to be a New York resident, although he actually resided in Oklahoma and never lived at the address he listed on his nominating petition. Perhaps the candidate had no intent of posing as a hometown candidate to attract voters. But it might certainly be the case that some voters will vote for a hometown candidate, without considering any other factors. Consider the fact that there are presently three Representatives in U.S. Congress with the last name Smith. One clear way to identify them is by their residency (Representative Smith from New Jersey, Representative Smith from Washington, and

Representative Smith from Missouri). Residency is certainly a significant requirement to ensure that voters correctly identify their intended candidates. New York's residence requirement withstands the lesser exacting inquiry under *Anderson-Burdick* because it furthers the States' legitimate interests in providing voters with accurate information about the identities of candidates.

At its most extreme, requiring accurate residency disclosures protects voters from the type of criminal fraud and manipulation at issue in *United States v. Smilowitz*. There, developer defendants fraudulently registered voters, falsified registration forms, and falsely listed an address in which their chosen candidate did not reside in so that the developers could control local government decisions and further their real estate development project. *United States v. Smilowitz*, 974 F.3d 155, 156 (2d Cir. 2020). The residence requirement is neither a Sisyphean hurdle nor an antiquated artifact. Rather, as Judge Ryba suggested in the State Action, the provision furthers legitimate state interests:

> Using a friend's address for political and voting purposes, while barely stepping foot on the premises, does not equate to residency under the Election Law. To hold otherwise would establish a dangerous precedent and open the door to the fraud and political mischief that the Election Law residency rules were designed to prevent.

*Cartwright v. Kennedy*, 2024 N.Y. Misc. LEXIS 3768, *47 (N.Y. Sup. Ct. Albany County, Aug. 13, 2024).

On balance, requiring strict compliance with the residence requirement is an important mechanism the State uses to regulate and administer fair and orderly elections. New York Election Law's interpretation of residence effects voters and candidates alike. *See Wit v. Berman*, 306 F.3d 1256, 1262 (2d Cir., 2002) (noting that "[d]omicile as a rule may have its philosophical defects . . . but it has enormous practical advantages over the alternatives" providing "workable standards" for election regulatory officials). And, while residency determinations might have greater import in determining in-state residency qualifications for local and state elections such

as town selectman races, gubernatorial races, or U.S. Congressional races, New York does have

an important interest that Presidential candidates qualify and comport with Twelfth Amendment

requirements that Presidential "Electors . . . shall vote . . . for a President and Vice President, one

of whom, at least, shall not be an inhabitant of the same state with themselves." U.S. CONST.

amend. XII.[18] Plaintiffs have not sufficiently demonstrated that they are likely to succeed on

their claim that the residence requirement violates the Presidential Qualifications Clause.

Plaintiffs argue that the residence requirement violates the limits set forth in U.S. CONST., art. II,

§1, cl. 5, because it imposes two additional qualifications on independent candidates seeking

ballot access in New York. However, the residence requirement applies equally to independent

and established candidates. Whether any of the twenty-one States, in addition to New York, who

have similar residence requirements violate the Qualifications clause has yet to be decided by the

Supreme Court.

 And, as described above, New York's residence requirement as it is defined is more

forgiving than inhabitancy under the Twelfth Amendment. *Compare* N.Y. Elec. Law § 1-104(22)

("A candidate's "residence" is where he "maintains a fixed, permanent and principal home and

to which he, wherever temporarily located, always intends to return.") *with Jones v. Bush*, 122 F.

Supp. 2d 713, 719-20 (N.D. Tex. 2000) citing *State of Texas v. State of Florida*, 306 U.S. 398,

424, 83 L. Ed. 817, 59 S. Ct. 563 (1939) ("[A] person is an "inhabitant" of a state, within the

meaning of the Twelfth Amendment, if he (1) has a physical presence within that state and (2)

intends that it be his place of habitation. The test for ascertaining inhabitance is thus a dual

inquiry concerning physical presence in fact and intent to remain in or to return to the state after

---

[18] *See Jones v. Bush*, 122 F. Supp. 2d 713 (N.D. Tex. 2000). Notably, the Court's analysis rested upon determining whether Vice President nominee Cheney qualified as an inhabitant of Wyoming within the meaning of the Twelfth Amendment.

an absence."). New York State allows for multiple states of residence while an individual may only have one state of inhabitancy under the Twelfth Amendment.

Under the "quite deferential" review at the second step of the *Anderson-Burdick* inquiry, *Price*, 540 F.3d at 109, the State's purported regulatory interests in guarding against voter confusion justify the *de minimis* burden of requiring candidates to comply with the residence requirement.

Plaintiffs have failed to show they are likely to succeed on the merits of their U.S. constitutional claims. *See Matter of Cartwright v. Kennedy*, 2024 N.Y. App. Div. LEXIS 4529, *9 (3d Dep't Aug. 29, 2024) ("[W]e find that none of the constitutional challenges raised by the respondent candidates has merit.").

## V.    Plaintiffs Have Not Sufficiently Proved Irreparable Harm

In the First Amendment context, plaintiffs must demonstrate a likelihood of success on the merits in order to show irreparable harm. *Libertarian Party of N.Y. v. N.Y. Bd. of Elections*, 539 F. Supp. 3d 310, 329-30 (S.D.N.Y. 2021). Because Plaintiffs have not demonstrated a likelihood of success on the merits, the Court finds that they have not established irreparable harm.[19]

---

[19] Defendants claim that there is no irreparable harm because Kennedy has stopped trying to win the 2024 Presidential election, he cannot win, and his voters can write his name in if they so choose to on the ballot.  These arguments fail.

There is no question that "voting is of the most fundamental significance under our constitutional structure." *Burdick*, 504 U.S. at 433. (internal citation omitted). Citizens have a right to vote for the candidate of their choice.

Defendants claim that if the injunction is denied, Kennedy will not suffer irreparable harm because he cannot win the election and his supporters can write his name in.  For the same reasons discussed in the section on mootness, these arguments fail. Whether a candidate can win an election is irrelevant to a citizens' constitutional right to vote for that candidate. As described above, there are important goals for Kennedy and his party in future elections in New York if Kennedy garners five percent of the national vote. Under New York law, Kennedy's party will qualify as a party automatically eligible for placement on the ballot at a future election if he receives a significant percentage of the New York vote. *See* Election Law §§ 1-104(3), 6-128.

A write-in vote is not an adequate substitute for having a candidate's name appear on the ballot. *Anderson v. Celebrezze*, 460 U.S. 780 n. 26 (1983). "The realities of the electoral process, however, strongly suggest that 'access'

**VI.    The Public Interest and Balancing of the Equities Do Not Support Preliminary Relief**

When balancing the equities, Plaintiff has failed to prove that this extraordinary relief is warranted. In a suit against the government, balancing of the equities merges into our consideration of the public interest. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020). As explained above, the presidential-election requirement serves important regulatory interests. Certainly, "securing First Amendment rights is in the public interest," *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013), but "that is of no help to a plaintiff [like Kennedy] who is not likely to succeed on its First Amendment claim." *Sam Party of N.Y.*, 987 F.3d at 278. Even if Plaintiffs could establish a likelihood of prevailing on the merits, the public interests of the State outweigh those of the Plaintiffs.

While a significant number of voters certainly want to see Kennedy's name on the ballot for the upcoming Presidential election, "the interest of these voters does not outweigh the broader public interest in administrable elections." *Id.* There is no question that "[no] right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." But, as the Supreme Court has advised, "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system. *Burdick*, 504 U.S. 428, 441 (1992) (internal citations omitted).

---

via write-in votes falls far short of access in terms of having the name of the candidate on the ballot. . . . [A candidate] relegated to the write-in provision, would be forced to rest his chances solely upon those voters who would remember his name and take the affirmative step of writing it on the ballot." *Lubin v. Panish*, 415 U.S. 709, n. 5 (1974).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's emergency request for a preliminary injunction is hereby **DENIED**.

**SO ORDERED.**

**Dated:**    **September 10, 2024**
            **New York, New York**

_____
        **ANDREW L. CARTER, JR.**
        **United States District Judge**